JAMES, J.,
FOR THE COURT:
¶ 1. Marvin Rerockus Demond Carver appeals from his conviction of possession of more than thirty grams but less than 250 grams of marijuana. Carver was sentenced as a subsequent drug offender under Mississippi Code Annotated section 41-29-147 (Rev. 2013) and as a habitual offender under , Mississippi Code Annotated section 99-19-81 (Rev. 2015) to six years in the custody of the Mississippi Department of Corrections without the possibility for parole or early release. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶2, On November 23, 2011, half-brothers Carver and Nicholas Ingram were traveling from Grenada, Mississippi, to the Mississippi Gulf Coast. Ingram was driving, and Carver was in the front passenger seat. Carver and Ingram were pulled over for speeding on Interstate 55 in Madison County by State Trooper Wade Zimmerman.
¶ 3. Trooper Zimmerman noticed a strong odor of marijuana coming from the vehicle when he approached the driver’s side of-the vehicle. Trooper Zimmerman observed that Ingram’s eyes were “very bloodshot.” Trooper Zimmerman asked Ingram to step out of the vehicle and questioned him while Carver remained in the vehicle. Trooper Zimmerman asked Ingram if he had been smoking marijuana. Ingram initially denied smoking marijuana, and Trooper Zimmerman gave him a field sobriety test. Ingram- then admitted that he had been smoking marijuana, and he gave Trooper Zimmerman consent to search the vehicle.
¶4. Trooper Zimmerman discovered a handgun under the driver’s seat and a small bag of marijuana in the center console. Trooper Zimmerman discovered two larger plastic bags containing a total of nearly four ounces of marijuana in the trunk. One bag was wrapped in a manila envelope, and the other bag was in a white plastic shopping bag. A digital scale was also discovered in the trunk near the bags of marijuana. Ingram told Trooper Zimmerman that the marijuana found in the trunk was hot his, and he also denied having any knowledge' of it.
¶ 5. Ingram and Carver were arrested and transported to the Madison County Jail. At the jail, police discovered $893 cash in Ingram’s pocket, Agent Candace Edwardk of the Mississippi Bureau of Narcotics interviewed Ingram and Carver. Ingram and Carver also provided written statements!
¶6. Ingram told Agent Edwards that the marijuana found in the center console was left over from a blunt he had just smoked. While on the roadside, Ingram had initially denied any knowledge of the marijuana in the trunk but claimed full responsibility for it and the handgun during his interview and in his written statement. Ingram’s statement provided that the marijuana was for his personal use. He also told Agent Edwards: “[W]e [were] going to smoke it for the weekend.”
¶ 7. Carver told -Agent Edwards that he had previously served nine years in prison *1152 for a drug-possession charge. He told Agent' Edwards that he and Ingram’s grandmother had asked him to go with Ingram to the coast. Agent Edwards testified that “Carver stated that he knew about the marijuana in the vehicle and that he ... and Nicholas Ingram were going to smoke it for Thanksgiving.” Carver told Agent Edwards that he did not know anything about the gun being in the vehicle. Carver’s written statement provided, in part:
I knew nothing of [Ingram] possessing the firearm and by him knowing that I hate being around guns, he had kept it a secret—until we got pulled over! ... The marijuana he had, I knew about because he said he had [some] “weed” for us to smoke for Thanksgiving. Me being the older “square,” as he calls me[,] agreed to “puff’ for the special occasion. I didn’t know he had all that much marijuana until the police pulled it out [of] the trunk! ... My brother is responsible for the marijuana and holding the firearm secretly!
(Emphasis in original).
¶ 8. On August 21, 2012, Carver and Ingram were indicted for possession of more than thirty grams but less than one kilogram of marijuana with intent to distribute, while in possession of a firearm, and for conspiracy to possess more than thirty grams but less than one kilogram of marijuana with intent to distribute. Carver was tried before a Madison County jury on June 12-13, 2013.
¶ 9. Ingram, who had pled guilty prior to Carver’s trial, testified on behalf of Carver. Ingram testified that his grandmother rented a vehicle for him to drive to the coast for the Thanksgiving holiday. Ingram testified that he had purchased and placed the marijuana in the trunk outside of Carver’s presence. Ingram also testified that he placed the handgun under the driver’s seat outside of Carver’s presence. Ingram testified that he picked Carver up and told him to throw his luggage in the trunk because he was in a hurry to go to the coast. Ingram testified that he did not intend to sell or distribute the marijuana that was found in the vehicle. Ingram testified that “[the marijuana] was only for my personal consumption ... and maybe [to] smoke with a couple of people at holiday time.”
¶ 10. On cross-examination, when asked about whether Ingram had initially denied having marijuana in the vehicle to Trooper Zimmerman, he testified that he “didn’t tell [Trooper Zimmerman] anything.” When asked whether he had been smoking marijuana that day, Ingram testified: “I told [Trooper Zimmerman] not in the vehicle. Yes, I had smoked weed earliér, but not before I got in the vehicle nor in the vehicle.” Ingram then testified that he could not remember if he told Trooper Zimmerman about the marijuana in the vehicle. Ingram also testified that he and Carver had not smoked marijuana in the vehicle during their trip between Grenada and Madison County.
¶ 11. Ingram testified that the marijuana in the center console had been taken from the larger amount in the trunk. Ingram admitted on the stand: “In the spirit of the holiday, I was going to freely smoke with others and for my own personal consumption.”
¶ 12. Carver took the stand in his defense. Carver explained that on November 23, 2011, Ingram had called him earlier that day about riding to the coast together for the Thanksgiving holiday. Carver testified that he did not smoke marijuana with Ingram that day. Carver testified that he did not know there was marijuana in the trunk. Carver also testified that he did not know about the handgun under the driv *1153 er’s seat. Carver gave the following testimony:
During [mine and Ingram’s] phone conversation, when we [were] talking about, you know, when he was telling me he was going to the coast and all, and I was asking him what we [were] going to do, what [were] we going to do. I was like what [were] we going to do for Thanksgiving. And that’s when he told me that, he mentioned, he said that he will smoke some marijuana with me for Thanksgiving-
¶ 13. When Carver was asked whether he knew where the marijuana was that Ingram had mentioned on the phone, Carver testified: “[Ingram] didn’t tell me where it was or if he already had it or, you know, was he going to buy it or whatever. I didn’t know.” Carver also gave, the fol-. lowing explanation regarding his written statement: “[M]y statement said I knew about [the marijuana], because he said he had some for us to smoke for Thanksgiving. He was going to smoke some with me for Thanksgiving.” Carver further testified: “I knew he said he had some for us to smoke for Thanksgiving.” Later on cross-examination, when asked whether Ingram intended to share the marijuana with him that was found in the vehicle, Carver testified: “Ingram said he had some [marijuana] for me. He had some weed for us to smoke for Thanksgiving.”
¶ 14. The jury found Carver guilty of the lesser-included offense of possession of more than thirty grams but less than 250 grams of marijuana. Carver was acquitted of the conspiracy charge. The trial court sentenced Carver as a habitual offender and subsequent drug offender to six years without the possibility for parole or early release.
¶ 15. Carver appeals to this Court raising three assignments of error: (1) whether there was sufficient evidence to support his conviction; (2) whether the trial court erred by admitting evidence his prior arrest for auto burglary, prior misdemeanor convictions, and details of his prior conviction for the sale of cocaine; and (3) wheth-' er the trial court erred in sentencing him-as a subsequent offender under section 41-29-147. Finding no error, we affirm.
DISCUSSION
I. Sufficiency of the Evidence
¶ 16. Carver‘argues that the evidence was insufficient to support the guilty verdict. Carver argues that the evidence failed to show that he had knowledge of the marijuana in the trunk. Carver claims that the evidence failed to show that he intentionally and consciously possessed the marijuana by exercising dominion and control over it.
¶ 17. “In reviewing the sufficiency of the evidence, this Court examines whether there was sufficient evidence to find that the defendant committed the crime beyond a reasonable doubt.” Morgan v. State, 995 So.2d 812, 817 (¶ 16) (Miss. Ct. App. 2008) (citing Foley v. State, 914 So.2d 677, 690 (¶ 27) (Miss. 2005)). Challenges to the legal sufficiency of the evidence are reviewed in the light most favorable to the State. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss. 2005). “This Court must accept' as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and must- disregard evidence favorable to the defendant.” Warwick v. State, 179 So.3d 1069, 1073 (¶ 12) (Miss. 2015) (quoting Anderson v. State, 904 So.2d 973, 977 (¶ 8) (Miss. 2004)). “If any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt, this Court will not disturb the verdict.” Id. (citing Bush, 895 So.2d at 843 (¶ 16)).
*1154 ¶ 18. Possession of a controlled substance may be actual or constructive. Hudson v. State, 30 So.3d 1199, 1203 (¶ 10) (Miss. 2010). Constructive possession has been summarized by the Mississippi Supreme Court:'
[T]he law states that actual possession is not needed, that constructive possession will do. Nevertheless, the awareness and conscious intent to possess elements apply to both- actual and constructive possession. The only difference is that, with actual possession, the drug is actually found on the defendant’s person (i.e., in his hands, mouth, pockets, etc.), whereas, with constructive possession, the drug is simply found near the defendant’s person in a place over which the defendant exercises dominion or control. Thus, the ¡State has to prove that the defendant was aware of the cocaine and intentionally, but not necessarily physically, possessed it. To test whether the prosecution met this standard Of proof in individual cases, -each case must be viewed in light of its individual facts and circumstances'.
Glidden v. State, 74 So.3d 342, 348-49 (¶ 20) (Miss. 2011) (internal citations and quotations omitted) (quoting Hudson, 30 So.3d at 1203-04 (¶ 11)).
¶ 19. “There must be sufficient facts to warrant a finding that [the] defendant was aware of the presence and character of the particular substance and was intentionally and consciously.-in-possession of it.” Hudson, 30 So.3d at 1203 (¶ 10). Constructive possession may be shown by showing that the drug involved was subject to the defendant’s dominion or control. Id. Generally, proximity is an essential element, but it is not adequate by itself in the absence of other -incriminating circumstances. Id. The elements of constructive possession may be proved by circumstantial evidence. Kittrell v. State, 806 So.2d 1140, 1145 (¶ 18) (Miss. Ct. App. 2001).
¶ 20. The evidence is uncontradict-ed that Trooper Zimmerman noticed a strong odor of burnt marijuana coming from the vehicle when he approched the driver’s side of the vehicle. In addition, a small amount of marijuana was found in the center console between Ingram and Carver. Trooper Zimmerman also observed that Ingram’s eyes were “very bloodáhót.” TTboper Zimmerman testified that he “could definitely tell that [Carver and Ingram] had been smoking, or someone had Smoked in the[] car, because the burnt smell was there as well.” Ingram admitted that the marijuana found in the console was left over from a blunt he had smoked. Plus, he admitted that the marijuana in the blunt had been taken from the larger bags of marijuana -in the trunk.
¶21. Carver testified that he and Ingram had discussed bringing marijuana to smoke that weekend. Although Carver stated that he did not know he had “that much” marijuana in the trunk, Carver stated multiple times that he knew that Ingram had marijuana for them to smoke. Agent Edwards testified that Carver told her' during his interview that he knew about the marijuana. Carver’s written statement stated: “The marijuana he had, I knew about because he had some weed for us to smoke.”
¶22. The issue before this Court is whether or not the evidence is legally sufficient to support the elements of the crime. By admitting that he intended to smoke the marijuana, Carver manifested that he had constructive possession of an undivided interest in the amount of marijuana to be smoked. This undivided amount was subject to Carver’s dominion, and he could, when he was ready to, retrieve and smoke it. The dissent emphasizes Carver’s supposed lack of dominion *1155 and control over the marijuana, but there was no evidence at trial that suggested that Carver did not exercise dominion and control over Ingram's rental car and the marijuana in it. The State met its burden at trial to show that Carver had dominion and control over the marijuana. Carver had access to the rental car and loaded his luggage into the trunk, and there was no suggestion that Ingram limited Carver’s access to the trunk.
¶ 23. Further, Carver admitted that he knew Ingram had marijuana—just not “that much” marijuana. The dissent—after recognizing that Carver planned to smoke Ingram’s marijuana that weekend—writes, “However, Carver stated that he ‘didn’t know [that Ingram] had all that much marijuana until the police pulled it out [of] the trunk!’” (Emphasis in original; first brackets added by dissent). Carver, though, did not state that he “didn’t know [that Ingram] had marijuana in the trunk.” Instead, he stated that he “didn’t know [that Ingram] had all that much marijuana ..,. ” (Emphasis in original). Carver agreed to smoke the marijuana, knew that Ingram had the marijuana, and had dominion and control over the marijuana.
¶ 24, We find that there was sufficient evidence to show that Carver was aware of the presence and character of the marijuana, had dominion and control over it, and intended to possess it. In viewing the evidence with all reasonable inferences drawn in the light most favorable to the State, it was sufficient to support Carver’s guilty verdict.
II. Prior-Bad-Act Evidence
¶ 25. Carver argues that he was denied his fundamental right to a fair trial by the admission of certain evidence in violation of Mississippi Rule of Evidence 404. Specifically, Carver argues that the trial court erred by admitting evidence of his prior auto-burglary arrest and prior misdemean- or., convictions. Carver concedes that his prior. convictions for the , sale of cocaine were admissible under Rule 404(b) for the purpose of proving intent to distribute. However, Carver argues that the trial court erred by admitting the details of the three prior convictions, ■ specifically, his sentence and time served.
¶ 26. “The standard of review regarding admission or exclusion of evidence is abuse oí discretion. Where error involves the admission or exclusion of evidence, this Court will not reverse unless the error adversely affects a substantial right of a party.” Ladnier v. State, 878 So.2d 926, 932-33 (¶ 27) (Miss. 2004).
¶27. “The admissibility of evidence of other crimes or bad acts committed by the defendant is governed by Rule 404(b).” Denham v. State, 966 So.2d 894, 898 (¶ 18) (Miss. Ct. App. 2007). “Under Rule 404(b), ‘evidence of a crime other than the one for which the accused is being tried generally will not be admissible.’ ” Mitchell v. State, 110 So.3d 732, 734 (¶10) (Miss. 2013) (quoting Hargett v. State, 62 So.3d 950, 953 (¶ 8) (Miss. 2011)).
¶ 28. This assignment of error is procedurally barred because Carver failed to make any contemporaneous objections to any of this testimony at trial. See Hodges v. State, 14 So.3d 786, 789 (¶¶8-10) (Miss. Ct. App. 2009) (finding that arguments regarding evidence of prior bad acts were procedurally barred on appeal because the defendant failed to make any contemporaneous objections to the, testimony at trial).
¶ 29; Carver acknowledges that his trial counsel failed to object to the testimony regarding his prior convictions and arrest. As a result, he urges this Court to find plain error. “In order to prevail under the plain-error doctrine, an appel *1156 lant must show that there was an error in the trial court and that the error resulted in a manifest miscarriage of justice.” Blunt v. State, 55 So.3d 207, 211 (¶ 16) (Miss. Ct. App. 2011). “Furthermore, this Court may-only apply the plain-error doctrine when the error complained of affects a defendant’s fundamental or substantial rights.” Id. We cannot say that the testimony about Carver’s 1998 burglary arrest, his misdemeanor convictions, and his sentence for his prior sale-of-cocaine convictions resulted in a manifest miscarriage of justice.[1]
III. Sentencing
¶ 30. Carver argues that the trial court erred in sentencing him as a subsequent drug offender under section 41-29-147. Carver claims the trial court erroneously believed that it had no discretion in sentencing him.
¶31. Section 41-29-147 provides that “any person convicted of a second or subsequent offense under this article may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that otherwise authorized, or both.”
¶ 32. The failure to object at sentencing bars Carver from challenging his sentence on appeal. See Foster v. State, 148 So.3d 1012, 1015-16 (¶ 10) (Miss. 2014). However, a procedural bar related to sentencing is waived only when the error results in an illegal sentence. Id. at (¶ 12). The Mississippi Supreme Court has consistently held that “sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute.” Id. at (¶ 13). The maximum sentence for possession of more than thirty grams but less than 250 grams of marijuana is three years. • Miss. Code Ann. § 41-29-139(c)(2)(C) (Rev. 2013). Because Carver was found to be a subsequent drug offender under section 41-29-147, the trial court was authorized to double his maximum sentence for the possession of marijuana.
¶ 33. Carver’s sentence was within the statutory maximum. As a result, this issue is procedurally barred because Carver’s sentence was not illegal.
CONCLUSION
¶ 34. Finding no error, we affirm the judgment of the circuit court.
¶ 35. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF POSSESSION OF MORE THAN THIRTY GRAMS BUT LESS THAN 250 GRAMS OF MARIJUANA AND SENTENCE AS A HABITUAL OFFENDER AND SUBSEQUENT DRUG OFFENDER OF SIX YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
LEE, C.J., GRIFFIS, P.J., CARLTON AND GREENLEE, JJ., CONCUR. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, ISHEE, FAIR AND WILSON, JJ.

. Alternatively, Carver argues that his trial counsel was ineffective for failing to object to this testimony. We find that this claim is more appropriate for postconviction-relief proceedings. Bowlin v. State, 154 So.3d 883, 886 (¶ 8) (Miss. 2015).