# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CT-00384-SCT

*MARVIN REROCKUS DEMOND CARVER a/k/a*
*MARVIN REROCUKUS DEMOND CARVER a/k/a*
*MARVIN CARVER a/k/a MARVIN REROCKUS*
*CARVER a/k/a MARVIN R. CARVER a/k/a "FOOT"*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

DATE OF JUDGMENT:                06/18/2013
TRIAL JUDGE:                         HON. WILLIAM E. CHAPMAN, III
COURT FROM WHICH APPEALED:   MADISON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:      OFFICE OF THE STATE PUBLIC
                                 DEFENDER
                                 BY: HUNTER NOLAN AIKENS
                                     GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                                 BY:  BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:               MICHAEL GUEST
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     REVERSED AND RENDERED - 10/12/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     Marvin Rerockus Demond Carver was the passenger in a vehicle not owned by him

in which marijuana was found in the rear of the trunk. Although Nicholas Ingram, Carver's

half-brother who had been driving the vehicle, took full ownership of the contraband, Carver

was convicted of possession of marijuana. Because the State presented insufficient evidence to support Carver's conviction, we reverse and render judgment.

## FACTS AND PROCEDURAL HISTORY

¶2.     In November 2011, Nicholas Ingram, Carver's half-brother, planned to drive from Grenada to the coast to surprise his mother for Thanksgiving. Ingram's and Carver's grandmother had rented a car for Ingram to take on the trip. She then asked Carver to accompany Ingram so he would not be alone. The trip was described as last-minute, and Carver stated that he had decided to go the same day that Ingram had planned to leave. In a rush, Ingram picked up Carver on his way to the coast.

¶3.     Wade Zimmerman, a state trooper for the Mississippi Highway Patrol, pulled Ingram over for speeding in Madison County. Trooper Zimmerman testified that he first went to the passenger side of the vehicle, where Carver was sitting, to obtain identification. Trooper Zimmerman returned to his car and then proceeded to the driver's side of the vehicle. At that time, Trooper Zimmerman testified that he noticed a strong odor of marijuana emanating from the vehicle. He noted that Ingram's eyes were bloodshot. Trooper Zimmerman asked Ingram to step out of the vehicle for questioning. Ingram first denied smoking marijuana but later admitted he had been smoking after Trooper Zimmerman performed a field sobriety test. Trooper Zimmerman testified that Ingram then consented to a search of the vehicle.

¶4.     Under the driver's seat, Trooper Zimmerman found a small hand gun. In the center console was a small bag containing less than a gram of marijuana. Trooper Zimmerman found two larger bags of marijuana in the right rear side of the trunk of the car, underneath

the flap where the spare tire is stored. One bag was wrapped in bubble wrap inside a manila envelope. The second bag was bubble-wrapped and in a white plastic bag. A digital scale also was in the trunk of the vehicle. Subsequently, Ingram and Carver were taken into custody. Ingram had in his possession more than eight hundred dollars in cash.

¶5. Both Ingram and Carver waived their *Miranda* rights.[1] Agent Candace Beth Edwards with the Mississippi Bureau of Narcotics first interviewed Ingram. At that time, Ingram admitted purchasing the marijuana from a bar in Grenada and claimed sole ownership of it. Ingram stated that he had paid $300 for the marijuana. He also stated that he had purchased the gun for protection around three months prior after a family member had been killed. Ingram testified that he had purchased the marijuana to smoke with a couple of people for the holiday and that he had been smoking marijuana prior to getting in the car that day. Ingram said that Carver had not known about the marijuana in the car. Agent Edwards testified that Ingram had taken full responsibility for everything illegal that was found in the vehicle.

¶6. Agent Edwards then interviewed Carver. She testified that Carver had stated that he had known about the marijuana in the vehicle and that he had agreed to smoke marijuana with Ingram for the holiday. Carver did not state that he had known specifically about the marijuana in the trunk. Agent Edwards testified that she had assumed that he knew about all of the marijuana in the vehicle because the amount in the center console was not enough for a marijuana cigarette.

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶7. In Carver's written statement, he said that "the marijuana he had, I knew about because he said he had sum 'weed' for us to smoke for Thanksgiving. Me being the older "square," as he calls me agreed to 'puff' for the special occasion. *I didn't know* he had all that much marijuana until the police pulled it out the trunk!" (Emphasis added.) Carver testified about the conversation he had with Ingram, stating:

> CARVER: I was like what was we going to do for Thanksgiving. And that's when he told me that, he mentioned, he said that he will smoke some marijuana with me for Thanksgiving.
> COUNSEL: So did you know where the marijuana you were going to smoke for Thanksgiving with Nicholas Ingram, did you know where that marijuana was?
> CARVER: Well, no, he didn't tell me where it was or if he already had it or, you know, was he going to buy it or whatever. I didn't know.
> COUNSEL: So it's fair to say that you did not know that there was any marijuana in the car, but you did know, 'cause ya'll had talked about it, that over the holiday, over Thanksgiving, you and your brother were going to smoke some marijuana?
> CARVER: Yes, that's what he told me, that he will smoke some with me for Thanksgiving, as we had mentioned.

¶8. Both Ingram and Carver were indicted for possession of thirty grams but less than one kilogram of marijuana with intent to distribute, while in possession of a firearm, and conspiracy to distribute. Ingram pleaded guilty to possession of marijuana, and Carver's case went to trial. The jury acquitted Carver of conspiracy but convicted him of the lesser-included offense of possessing more than thirty but less than 250 grams of marijuana. The circuit court then sentenced Carver to serve six years in prison.

¶9. The Court of Appeals affirmed Carver's conviction, finding that the evidence was sufficient "to show that Carver was aware of the presence and character of the marijuana, had dominion and control over it, and intended to possess it." ***Carver v. State***, No.

4

2015-KA-00384-COA, 2016 WL 6471407, at *4 (Miss. Ct. App. Nov. 1, 2016), *reh'g denied* (Apr. 25, 2017), *cert. granted*, 222 So. 3d 311 (Miss. 2017). Judge Irving's dissenting opinion instead argued that the evidence had been insufficient to bridge the gap between suspicion and proof beyond a reasonable doubt that Carver had exercised dominion and control over Ingram's marijuana. *Id.* at *11.

¶10.    Carver appeals, arguing three issues. Because the first is dispositive, we decline to address the remaining two issues.

## ISSUE

¶11.    Whether the evidence was sufficient to support the verdict.

## DISCUSSION

¶12.    Because marijuana was not found in Carver's actual, physical possession, this Court must determine if the evidence was sufficient to establish constructive possession. In constructive-possession cases, the State must prove that the defendant was both aware of the contraband and intentionally, although not physically, possessed it. *Glidden v. State*, 74 So. 3d 342, 348–49 (Miss. 2011). We have established the following rule regarding constructive possession:

> [T]here must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.

5

*Hamm v. State*, 735 So. 2d 1025, 1028 (Miss. 1999) (quoting *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971)). "[T]he State must prove dominion and control over the contraband and not simply the automobile in order to satisfy the *Curry* test." *Boches v. State*, 506 So. 2d 254, 259 (Miss. 1987) (quoting *Hudson v. State*, 362 So. 2d 645, 647 (Miss. 1998)). When the defendant does not own the premises, the State must show additional incriminating circumstances connecting the defendant to the contraband. *Fultz v. State*, 573 So. 2d 689, 690 (Miss. 1990).

¶13.    As previously stated, proximity usually is an essential element of constructive possession. This Court has expressed skepticism concerning the issue of proximity when marijuana was found under the hood of a car not owned by the defendant. *Hudson*, 362 So. 2d at 647. There, this Court stated: "First, even the proximity is questionable since the marijuana was not inside the car, but secreted under the hood of the car." *Id.* In reversing the defendant's conviction of possession, the *Hudson* Court additionally noted the differences in that case and in *Curry*, where marijuana had been found inside the defendant's car in which he was a passenger and within his sight and reach. *Id.* (citing *Curry*, 249 So. 2d at 414).

¶14.    Evidence of constructive possession also has been insufficient where contraband was found in a car not owned by the defendant but where the defendant had been driving and had been the sole person present in the car. In *Fultz*, the defendant had been driving his sister's car when he was pulled over for driving erratically. *Fultz v. State*, 573 So. 2d 689, 689-90 (Miss. 1990). More than seven ounces of marijuana were found in the trunk of the car. *Id.*

6

at 690. This Court reversed the defendant's conviction and reasoned that, although the defendant had been the sole person in the car and had admitted to smoking marijuana, the State had failed to prove a connection between the defendant and the contraband. *Id.* at 691. Similarly, in *Ferrell*, the defendant was the sole occupant of the car but was not the owner. *Ferrell v. State*, 649 So. 2d 831, 832 (Miss. 1995). Contraband was found concealed in a matchbox. *Id.* at 834. This Court reversed the possession charge, stating that "the contraband was not positioned in such a way that its presence would be reasonably apparent to a person riding in the car." *Id.* at 835.

¶15.   Even proximity coupled with knowledge previously has presented insufficient evidence to establish constructive possession. In *Martin*, the defendant was found standing over two Tupperware containers of marijuana in a kitchen where more than eight ounces of marijuana were recovered. *Martin v. State*, 804 So. 2d 967, 970 (Miss. 2001). The defendant admitted that he had known that the others had been "messing with marijuana" but denied he had been involved. *Id.* at 969. This Court reversed the defendant's conviction, finding that the defendant's "mere presence in the kitchen area where the marijuana was found, without more, is simply not enough." *Id.* And in *Naylor v. State*, a narcotics unit entered a bathroom and observed the defendant jumping into the bathtub while another individual attempted to flush cocaine down the toilet. *Naylor v. State*, 730 So. 2d 561, 563 (Miss. 1998). The defendant also had been in possession of more than seven hundred dollars in cash. *Id.* at 566. However, this Court reversed and rendered the defendant's conviction, finding that the

evidence was insufficient to prove that the defendant had possessed the cocaine. *Id.* at 566-67.

¶16. This case, too, involves a situation in which we express skepticism of the proximity of Carver to the marijuana found in the trunk of a car not owned by him, in addition to Carver's knowledge of the marijuana. However, the biggest obstacle in this case is the issue of dominion and control. This Court has held that "mere presence does not indicate participation in the purchase. Nor does it support an inference of dominion and control." *Berry v. State*, 652 So. 2d 742, 748 (Miss. 1995). Dominion and control must be established by evidence more compelling than the momentary handling of the contraband. Momentary handling of the contraband is not enough to establish constructive possession. *Berry v. State*, 652 So. 2d 745, 751 (Miss. 1995). There, the defendant placed drugs in the glove compartment of a vehicle at his friend's direction. *Id.* In finding that constructive possession had not been established, this Court stated that, "possession is defined . . . in terms of the exercise of dominion and control." *Id.* No evidence had been presented that the defendant had owned the drugs, had paid for them, or had controlled them in any way. *Id.*

¶17. Evidence of dominion and control in this case is lacking. Ingram took full responsibility for everything illegal that had been found inside the vehicle. Moreover, Zimmerman testified that initially he had approached the passenger's side of the car; yet it was not until he returned from his patrol car to the driver's side of the vehicle that he noticed the strong odor of marijuana. Zimmerman also noticed that Ingram's eyes had been bloodshot. After a field sobriety test, Ingram admitted that he had been smoking but denied

8

smoking in the car. Zimmerman then found the gun under Ingram's seat and a small amount of marijuana in the center console. Ingram additionally had more than eight hundred dollars in cash in his pocket. The patrolman testified that he had found two larger bags of marijuana in the trunk of the vehicle, both wrapped in bubble wrap. Ingram and Carver each testified that Carver had no knowledge of the marijuana in the trunk. Moreover, Ingram testified that the marijuana had been under the flap for the spare tire, not in plain view. And although Ingram and Carver were half-brothers, this Court previously has held that "[i]t cannot be presumed that, simply because two people associate with one another, they are accomplices in a common crime." *Cunningham v. State*, 583 So. 2d 960, 962 (Miss. 1991).

¶18. The Court of Appeals found that Carver's expression of his intention to smoke marijuana manifested constructive possession of an undivided interest in the amount of marijuana to be smoked. *Carver v. State*, No. 2015-KA-00384-COA, 2016 WL 6471407, at *4 (Miss. Ct. App. Nov. 1, 2016), *reh'g denied* (Apr. 25, 2017), *cert. granted*, 222 So. 3d 311 (Miss. 2017). We disagree. Testimony shows that the marijuana was found in the right rear of the trunk of the vehicle, under the flap for the spare tire. Carver denied knowledge of the marijuana in the trunk, and Ingram testified that Carver had not known of the marijuana in the trunk. Thus, proximity and knowledge of the contraband in this case present skepticism. Carver admitted that he had planned on smoking marijuana over the holiday. However, no evidence established that Carver had exercised dominion or control over the marijuana found in the trunk of the vehicle. Even had Carver had knowledge of the marijuana

9

secreted in the trunk, the State must have proven beyond a reasonable doubt that Carver had constructively possessed the contraband. This it failed to do.

¶19.    In addition, the appeals court stated that "[t]here was no evidence at trial that suggested that Carver did not exercise dominion and control over Ingram's rental car and the marijuana in it." *Id.* As the dissent noted, "it was the *State's burden* to prove that Carver exercised dominion or control over the marijuana; it was not Carver's burden to prove a negative or his innocence." *Id.* at *11. The evidence in this case falls short of the sufficiency required to establish a conviction of constructive possession. Accordingly, we reverse and render Carver's conviction and sentence.

¶20.    **REVERSED AND RENDERED.**

**RANDOLPH AND KITCHENS, P.JJ., COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. WALLER, C.J., AND ISHEE, J., NOT PARTICIPATING.**