# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01615-COA

**ROMAN HARVELL A/K/A ROMAN OBRYON**　　　　　　　　　**APPELLANT**
**HARVELL A/K/A ROMAN HARVILLE**

**v.**

**STATE OF MISSISSIPPI**　　　　　　　　　　　　　　　　　**APPELLEE**

DATE OF JUDGMENT:　　　　　　　06/01/2017
TRIAL JUDGE:　　　　　　　　　　HON. THOMAS J. GARDNER III
COURT FROM WHICH APPEALED:　PRENTISS COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:　　　THOMAS ORVILLE COOLEY
ATTORNEY FOR APPELLEE:　　　　OFFICE OF THE ATTORNEY GENERAL
　　　　　　　　　　　　　　　　BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:　　　　　　　J. TRENT KELLY
NATURE OF THE CASE:　　　　　　CRIMINAL - FELONY
DISPOSITION:　　　　　　　　　　AFFIRMED - 05/07/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

　　　　**EN BANC.**

　　　　**J. WILSON, P.J., FOR THE COURT:**

¶1.　Roman Harvell had two different drug charges pending against him. Both were on the circuit court's docket for trial on May 30, 2017. At some point during jury selection on May 30, Harvell's lawyer realized that he had misunderstood which case was about to go to trial. Counsel moved for a continuance, but the judge denied the last-minute request. The jury found Harvell guilty of drug trafficking, and the court sentenced him to serve forty years in the custody of the Department of Corrections with ten years suspended.

¶2.　On appeal, Harvell argues that the trial judge abused his discretion by denying a continuance. He also argues that he is entitled to a new trial because one of the two assistant

district attorneys who tried the case previously represented a defense witness. Finally, Harvell argues that there is insufficient evidence to support the jury's verdict and his conviction. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. On September 28, 2016, a confidential informant (CI) went to Roman Harvell's apartment[1] to buy drugs. Investigator Jason Chism of the Baldwyn Police Department (BPD) testified that he knew that the apartment was Harvell's because he had been there on prior search warrants and because the utilities had been in Harvell's name since 2011. The CI had offered to make a drug buy in order to avoid being charged with child endangerment.

¶4. Before the CI went to the apartment, Chism made certain that she did not have any drugs on her person. Chism, Officer Adam Cook, and Officer Chris Gilland monitored the CI's interactions in the apartment via a three-way phone call. Chism testified that the BPD did not have equipment for audio or video recording, so they hid a cell phone on the CI and kept an open phone line during her time in the apartment. Chism stated that he was familiar with Harvell's voice because he had spoken to Harvell numerous times in the past. Chism testified that he recognized Harvell's voice during the interaction with the CI. When the CI left Harvell's apartment and returned to meet Chism, she had a substance that appeared to be meth. According to Chism, the CI "didn't buy [the meth], but was given some." A field test confirmed that it was, in fact, meth.

¶5. Chism then obtained a search warrant for Harvell's apartment. The underlying facts

---

[1] Harvell's two-bedroom apartment was part of a triplex house.

and circumstances that Chism submitted in support of his application for a warrant included evidence against Harvell that went back several years. However, the primary basis for the warrant was that the CI had obtained meth from Harvell at his apartment that day.

¶6. By the time Chism obtained a search warrant, Harvell had left his apartment. Officer Anthony Buse was on the lookout for Harvell. Buse knew that Harvell had a suspended driver's license, and when he saw Harvell driving, he pulled Harvell over. Buse detained Harvell and took him back to his apartment. Chism and Cook were already in the process of searching the apartment.

¶7. After sweeping the apartment for weapons and other occupants, Chism and Cook began to search the apartment's "master bedroom." Chism testified, without objection, that he had been to the apartment twice before on prior search warrants. Chism testified that the master bedroom was Harvell's bedroom and that Harvell had various "belongings" in it, including "power tools" and clothes. Officers also recovered bank cards and "identification" that belonged to Harvell from the bedroom and the kitchen.

¶8. When officers brought a drug-detection dog into the master bedroom, the dog "hit" on the closet door. The door's handle had been removed and replaced with a deadbolt. Chism asked Harvell if he had the key, but Harvell did not answer, so the police pried the door open with a tire iron. Inside the closet, they found a small safe that was bolted to the concrete slab of the house. The safe was equipped with a fingerprint lock, so the police used the tire iron to pry it open too. The safe contained a clear plastic bag containing what appeared to be meth. An analyst from the Tupelo Police Crime Lab testified and confirmed

3

that the substance was 91.57 grams of meth. Gilland testified that this was an uncommonly large quantity of meth—more than they usually saw.

¶9.    Chism testified that a man named Tony Agnew sometimes stayed at Harvell's apartment and that "different people would always be in and out over there." Chism did not know whether anyone else was staying there at the time of Harvell's arrest, but he conceded that there "was a very good possibility" of it. When officers initially entered the apartment, they found a woman they believed to be Harvell's aunt. Chism also acknowledged that another CI had been to the apartment on a different occasion and had bought drugs from someone other than Harvell.

¶10.    Chism testified that Harvell's apartment was "constantly" under surveillance. As noted above, he testified, without objection, that he had been there on prior search warrants. During one search, the police found meth, which resulted in a separate indictment against Harvell. During another search, they found drug paraphernalia.

¶11.    After the State rested, Harvell called one witness, Daniel Duvall. Duvall testified that he had known Harvell since high school. Duvall also testified that he and Chism "had run-ins on the road before." Specifically, Duvall testified that Chism arrested him in March 2014 for driving under the influence. A few days after his arrest, Duvall met with Chism and signed a written statement, prepared by Chism, in which he stated that he had bought meth from Harvell. Duvall acknowledged signing the statement, but he claimed that he "didn't read over it" and "was under pressure not to" read over it. Duvall denied telling Chism that he bought meth from Harvell. Duvall's testimony did not have anything to do with Harvell's

2016 arrest or indictment. It appears that Duvall's testimony was intended to suggest to the jury that Chism was out to get Harvell.

¶12. The jury found Harvell guilty of trafficking in a controlled substance. The court sentenced Harvell to serve forty years in the custody of the Department of Corrections, with ten years suspended and five years of post-release supervision. The court also imposed a fine of $50,445. Harvell filed a motion for a new trial, which was denied, and then appealed.

## ANALYSIS

¶13. Harvell raises three issues on appeal. First, he argues that the trial judge should have granted his motion to for a continuance because his attorney thought that his other case was going to be tried first. Second, Harvell argues that he is entitled to a new trial because one of the two prosecutors who tried the case previously represented Duvall. Finally, Harvell argues that he is entitled to a judgment of acquittal because there is insufficient evidence to support the jury's verdict and his conviction. After review, we find no error and affirm.

**I.     The denial of a continuance is not reversible error in this case.**

¶14. At the time of his trial, Harvell had two pending indictments: a 2014 indictment for possession of a controlled substance (the 2014 case) and a 2016 indictment for trafficking in a controlled substance (the 2016 case). The 2016 indictment charged that Harvell

> did willfully, unlawfully and feloniously traffic in a controlled substance by virtue of his selling, bartering, transferring, or possessing with intent to sell a quantity of Methamphetamine, a Schedule II Controlled Substance in violation of Mississippi Code Annotated, Section 41-29-139(a)(1), said quantity being greater than thirty (30) grams, in violation of Mississippi Code Annotated, Section 41-29-139(f).

As the indictment indicates, "trafficking in a controlled substance" includes, among other

5

things, possession with the intent to sell thirty or more grams of a Schedule II substance. Miss. Code Ann. § 41-29-139(f)(2)(A) (Supp. 2016). As noted above, 91.57 grams of meth were found in Harvell's safe.

¶15. On May 16, 2017, the State filed a request for witness subpoenas for trial on May 30, 2017, in the 2016 case. All five subpoenas issued for May 30 specifically referenced the 2016 case. Two of the subpoenas also referenced the 2014 case.

¶16. Both the 2014 case and the 2016 case were on the court's docket for trial on May 30, 2017. Early in the voir dire process on May 30, the trial judge started to tell the jury the charge in the case but then stopped to ask the attorneys, "This is possession with intent or sale? It's couched in the alternative." Counsel then approached for a bench conference that was outside the hearing of the court reporter and was not transcribed. The judge then told the jury that Harvell was charged with "possession, with intent to sell, a quantity of methamphetamine, . . . in violation of Mississippi Code Annotated Section 41-29-139(a)(1)." A few minutes (two transcript pages) later, the judge told the jury that the offense was "charged to have been committed [on] September 29, 2016." Harvell's attorney said nothing. Later during voir dire, the State specifically stated twice that Harvell was charged with possessing more than "thirty grams" of methamphetamine with the intent to sell. The State further stated that it intended to prove that the drugs "were in [Harvell's] house locked in a closet in a safe." Harvell's attorney objected at that point but only to the State "continuing to talk about the evidence in the case" during voir dire.

¶17. Once voir dire was complete and the jury had been empaneled, Harvell's attorney

6

stated, outside the presence of the jury,

> I'd like to make -- renew a motion for continuance on this case, stating that, again, my understanding was we would be trying the 2014 case, which Mr. Harvell currently has pending. In that case, the State had given me a final witness list after last term stating the witnesses that were to be called in that case. And, again, my preparation was for that case in response to the prosecution telling me that that case would be the one tried.[2]

In response, assistant district attorney (ADA) David Daniels stated that he had "made no such representation." The trial judge stated that the court's published docket "set[] about ten cases or so" for May 30, and the trafficking case was "one of them," so the motion would be denied. On appeal, Harvell argues that the judge's ruling was an abuse of discretion.

### A.      The issue is procedurally barred.

¶18.    Our Supreme Court has held repeatedly that "when a denial of a continuance is not included as an assignment of error in a motion for new trial, the issue is not appropriate for appellate review." *Shelton v. State*, 853 So. 2d 1171, 1182 (¶38) (Miss. 2003) (citing *Crawford v. State*, 787 So. 2d 1236, 1242 (¶25) (Miss. 2001)). Indeed, the Supreme Court recently reaffirmed this longstanding rule. *Miles v. State*, 249 So. 3d 362, 368 (¶30) (Miss. 2018). If the defendant's "motion for a new trial made no mention of the denial of a continuance," the "issue is not properly before this Court and is procedurally barred." *Id.*; *accord, e.g.*, *Morgan v. State*, 741 So. 2d 246, 255 (¶24) (Miss. 1999); *Walker v. State*, 671 So. 2d 581, 592 (Miss. 1995); *Metcalf v. State*, 629 So. 2d 558, 562 (Miss. 1993); *Pool v.*

---

[2] Counsel's statements that he wanted to "renew" his motion and "again" state his understanding as to which case would be tried suggest that he had raised the issue previously. However, this is the first time the issue was raised on the record. It is possible that counsel raised the issue during the unrecorded bench conference discussed above.

*State*, 483 So. 2d 331, 336 (Miss. 1986); *Jackson v. State*, 423 So. 2d 129, 132 (Miss. 1982). Harvell failed to raise this issue in his motion for a new trial. Therefore, the issue is procedurally barred.

¶19. The Supreme Court has recognized an exception to this procedural bar "in cases involving last-minute disclosure of witnesses" by the State. *Densmore v. State*, 27 So. 3d 379, 384 (¶19) (Miss. 2009). In *Densmore*, the trial court denied a continuance despite the State's failure to "disclose the identity of its star witness until the morning of trial." *Id.* at (¶20). Under those circumstances, the Supreme Court concluded that the error in the trial judge's ruling was "clear from the record," and "a post-trial motion reasserting this error" was unnecessary because it "would not have developed the record further." *Id.* at (¶19). The Supreme Court later reached a similar conclusion in a case involving the denial of a defendant's motions for a continuance for a mental evaluation to assess his competence to stand trial. *Harden v. State*, 59 So. 3d 594, 600-01 (¶¶11-12) (Miss. 2011). In *Harden*, the Court again reasoned that "the facts surrounding the alleged error in denying [the] motion" were "fully apparent from the record." *Id.* at 601 (¶12).

¶20. We conclude that *Densmore* and *Harden* are materially distinguishable and that their holdings are inapplicable. "[T]he facts surrounding the alleged error" in this case are *not* "fully apparent from the record." *Harden*, 59 So. 3d at 601 (¶12). Moreover, a post-trial motion could "have developed the record further." *Densmore*, 27 So. 3d at 384 (¶19). Here, defense counsel asserted that the State provided a witness list that led him to believe that Harvell's other case would be tried first, but the State denied his claim, and Harvell failed

8

to produce that list or anything else to support his claim. Moreover, Harvell failed to identify any witness or evidence that he needed more time to produce or any other trial preparation that necessitated a continuance. Such information was necessary to support Harvell's allegation of error, and it should have been provided in his motion for a new trial. Consistent with the Supreme Court's longstanding rule, we hold that Harvell waived the issue by failing to raise it in his motion for a new trial. *Miles*, 249 So. 3d at 368 (¶30).

### B.     The trial judge did not abuse his discretion.

¶21.    Notwithstanding the procedural bar, we also conclude that Harvell's claim is without merit. "It is within the circuit court's discretion to grant or deny a motion for a continuance." *Jackson v. State*, 231 So. 3d 257, 260 (¶15) (Miss. Ct. App. 2017). Harvell's 2016 case was on the circuit court's docket for trial on May 30, 2017. At the time of trial, former Rule 9.02 of the Uniform Rules of Circuit and County Court Practice provided: "A docket of cases ready for trial shall be maintained by the clerk or the court administrator. Cases set by the judge for hearing must be ready at the appointed time." URCCC 9.02.[3] Moreover, prior to trial, the State had indicated its readiness and intent to try the case by subpoenaing witnesses in the 2016 case to appear to testify at trial on May 30, 2017. Harvell was also required to be ready for trial, and we cannot say that the trial judge abused his discretion by denying counsel's last-minute request for a continuance.

### C.     Harvell fails to show any "manifest injustice."

¶22.    We also hold that Harvell's claim fails because he cannot show any prejudice from

---

[3] Rule 9.02 was repealed effective July 1, 2017, in connection with the Supreme Court's adoption of the new Rules of Criminal Procedure.

9

the denial of a continuance. The denial of "a motion for a continuance will not be reversed unless 'manifest injustice' results." *Jackson*, 231 So. 3d at 260 (¶15); *see* Miss. Code Ann. § 99-15-29 (Rev. 2015). "The burden of showing manifest injustice is not satisfied by conclusory arguments alone; rather the defendant is required to show concrete facts that demonstrate the particular prejudice to the defense." *Jackson*, 231 So. 3d at 264 (¶31) (brackets omitted) (quoting *Stack v. State*, 860 So. 2d 687, 691-92 (¶7) (Miss. 2003)). The record in this case does not support Harvell's claim that a manifest injustice occurred. On appeal, Harvell asserts that it is "clear" that his only witness, Duvall, was subpoenaed to testify in the 2014 case, not the 2016 case. However, the denial of a continuance did not compel Harvell to call Duvall. Harvell could have simply put the State to its burden of proving constructive possession of the drugs beyond a reasonable doubt. More important, Harvell fails to identify any other witness that he would have called or any other evidence that he would have presented if a continuance had been granted.[4] Rather, Harvell makes only "conclusory arguments" and fails to show any "concrete facts that demonstrate . . . particular prejudice to [his] defense." *Id.* Therefore, he has not met his burden of proving prejudice, and he is not entitled to a new trial. *Id.*

II.    **Harvell is not entitled to a new trial based on ADA Daniels's prior representation of Duvall.**

¶23.   Before Duvall was cross-examined, one of the two attorneys for the State—ADA

---

[4] We note that even after he knew that the 2016 case would be tried, Harvell's trial counsel told the court that he would call three or four witnesses. The record does not identify the additional witnesses that Harvell originally intended to call. Nor does it explain why they were not called to testify.

Daniels—told the court that he was "excluding" himself from the cross-examination "entirely" because he had previously represented Duvall while in private practice. Harvell's attorney did not state any specific objection or make any motion, but he did assert that Daniels's prior representation of Duvall "should have been disclosed before now." In response, Daniels explained that Harvell had "never named [Duvall] as a witness" in this case. Indeed, Duvall was not disclosed as a potential witness during jury voir dire, and a subpoena for Duvall was not issued until the first day of trial, which was the same day that Duvall was called to testify. The trial judge stated that ADA Wise could proceed with cross-examination of Duvall.

¶24. In his motion for a new trial, Harvell asserted that Daniels represented Duvall in connection with charges that resulted in the statement that Duvall testified about at trial. However, Harvell did not submit any documentation to substantiate that claim. Harvell also complained that Daniels "made reference in . . . closing arguments . . . to the length of time he had known [Duvall] and how rapidly he had aged in that time." Finally, Harvell asserted that he was entitled to a new trial based on the State's failure to disclose this "potential conflict" prior to trial or earlier on "during the trial." Harvell makes the same basic arguments on appeal. We conclude that this issue is without merit for multiple reasons.

¶25. To begin with, Harvell did not make a contemporaneous motion to disqualify Daniels or any other contemporaneous objection. All counsel said was, "Your Honor, I believe that should have been disclosed before now . . . ." In the absence of a contemporaneous objection, the issue is waived. *See, e.g.*, *Hughes v. State*, 90 So. 3d 613, 624 (¶26) (Miss.

11

2012) ("[A] motion for a new trial is not an opportunity to revive an issue which the party waived by failing to make a contemporaneous objection.").

¶26. Procedural bar aside, there is nothing in the record that would have put the State on notice that Duvall was going to testify in this trial. As Daniels stated, there is nothing in the record to show that Duvall was ever disclosed as a witness. Nor was Duvall identified to the jury panel as a potential witness during voir dire. A subpoena was not issued for Duvall until the day he testified. Moreover, Duvall had no personal knowledge of the facts of this case. Rather, Harvell called Duvall to testify about a statement he made to Chism two years earlier about an unrelated drug transaction. Duvall's testimony seems to have been offered solely in an attempt to undermine Chism's credibility. Harvell cannot complain about the State's failure to disclose an alleged "potential conflict" between Daniels and Duvall when Harvell himself failed to disclose that Duvall might be called to testify.

¶27. In addition, Harvell's argument relies on inapposite case law. He cites cases such as *Mickens v. Taylor*, 535 U.S. 162 (2002), and *Littlejohn v. State*, 593 So. 2d 20 (Miss. 1992), which deal with the Sixth Amendment right to effective assistance of counsel and potential or actual conflicts of interest *between the criminal defendant and his own lawyer*. These cases have nothing to do with an alleged potential conflict between a prosecutor and a previously undisclosed defense witness subpoenaed to testify on the day of trial.

¶28. The only arguably relevant authority that Duvall cites is Rule 1.9(b) of the Mississippi Rules of Professional Conduct, which provides that a lawyer shall not "use information relating to [a prior] representation to the disadvantage of the former client." Daniels

12

complied with Rule 1.9. He properly refrained from cross-examining Duvall.[5]

¶29. Finally, Harvell alleges that Daniels made improper comments about Duvall during closing argument. Daniels stated police had surveilled Harvell's house and knew it was a "dope house,"

> [b]ut you have to infiltrate the dope house somehow because [Harvell is] not going to sell to me. He's not going to sell to you. He's going to sell to his friends and his dope buddies like Donald [sic] Duvall.
>
> I know Donald [sic] Duvall. That boy has aged twenty years in the last four. That's what meth does to you. It ages you superfast . . . .

For the most part, these were fair comments on the evidence. Duvall admitted that he signed a statement in which he stated that he had obtained drugs from Harvell. Duvall also admitted that he was a meth addict. Harvell could have objected to Daniels's statement that he knew Duvall and knew that he had aged. *See Young v. State*, 420 So. 2d 1055, 1058 (Miss. 1982) (prosecutor should not intimate personal knowledge of the facts of a case). However, Harvell did not object and, thus, waived the issue. Daniels's brief comment was not the sort of "extreme and intolerable abuse" of closing argument that would warrant a new trial in the absence of an objection by the defendant. *See Jackson v. State*, 174 So. 3d 232, 236 (¶11) (Miss. 2015). Nor was the comment based on any confidential information that Daniels obtained as a result of his prior representation of Duvall.

---

[5] A number of courts have observed that "[a]n attorney who cross-examines a former client inherently encounters divided loyalties." *Perillo v. Johnson*, 205 F.3d 775, 801-02 (5th Cir. 2000) (quoting *United States v. Voigt*, 89 F.3d 1050, 1078 (3d Cir. 1996)); *but see Restatement (Third) of the Law Governing Lawyers* § 132 cmt. f, illus. 6 (2000) (concluding that a lawyer may cross-examine a former client so long as the lawyer does not make use of confidential client information). Here, Daniels took the safer course of not participating in the cross-examination of his former client.

¶30. In summary, we conclude that this issue is without merit. Harvell failed to identify Duvall as a witness until the day of trial, and nothing in the record suggested that Duvall would be a witness in this case. When Duvall was called to testify, Daniels acted properly by not participating in his cross-examination.

### III. There is sufficient evidence to support the conviction.

¶31. Harvell argues that he is entitled to a judgment of acquittal because there is insufficient evidence to establish constructive possession of the meth. "The . . . test for sufficiency of the evidence is familiar." *Poole v. State*, 46 So. 3d 290, 293 (¶20) (Miss. 2010). "We view the evidence in the light most favorable to the prosecution to determine whether rational, reasonable fair-minded jurors *could have found* that the State proved each essential element of the crime." *Id.* (brackets and quotation marks omitted). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements." *Id.* at 293-94. "Rather, we must decide whether a reasonable juror could rationally say that the State did." *Id.* at 294. "If, on any element of the crime, it is impossible to say that a reasonable person could have found that the State proved that element, then we must reverse and render. Otherwise, we must affirm . . . ." *Id.*

¶32. Harvell's indictment charged him with trafficking "in a controlled substance by virtue of his selling, bartering, transferring, or possessing with intent to sell a quantity of methamphetamine . . . said quantity being greater than thirty . . . grams." The trial court instructed the jury that the State had to prove beyond a reasonable doubt that Harvell had "possessed with intent to sell, methamphetamine . . . in an amount greater than thirty (30)

14

grams to another person or persons."

¶33.    On appeal, Harvell argues that the State did not prove that he actually or constructively possessed the meth found in his apartment.  Because the meth was not found in Harvell's actual, physical possession, we must determine only whether the evidence was sufficient to prove constructive possession.  "In constructive-possession cases, the State must prove that the defendant was both aware of the contraband and intentionally, although not physically, possessed it."  *Carver v. State*, 227 So. 3d 1090, 1093 (¶12) (Miss. 2017).  "Constructive possession may be shown by establishing that the drug involved was subject to [the defendant's] dominion or control."  *Id.* at 1093-94 (quoting *Hamm v. State*, 735 So. 2d 1025, 1028 (Miss. 1999)).  The person "in possession of premises upon which contraband is found is presumed to be in constructive possession of [the contraband]."  *Powell v. State*, 355 So. 2d 1378, 1379 (Miss. 1978).  However, when "contraband is found upon premises not in the exclusive control and possession of the accused, additional incriminating facts must connect the accused with the contraband."  *Id.*  "[T]here is no rigid rule that can be stated to govern every [such] case, but each case must be decided upon its peculiar facts."  *Id.*

¶34.    In this case, the State did not show that Harvell was in exclusive possession or control of the premises.  Chism acknowledged that other individuals stayed at Harvell's apartment frequently, that "different people would always be in and out over there," and that there "was a very good possibility" that others were staying there at the time of Harvell's arrest.  Police also found a woman believed to be Harvell's aunt at the apartment when they executed the

15

search warrant.

¶35.    However, the State presented sufficient evidence of "additional incriminating facts" that tied Harvell to the meth.  *Id.*  Chism testified that the apartment was Harvell's and that the utilities for the apartment had been in Harvell's name for at least five years.  Chism also testified, without objection, that he was familiar with the inside of Harvell's apartment because he had been there on two prior search warrants.  The prosecutor asked Chism, "So after you searched and cleared the house for weapons and so forth, did you find your way back to Mr. Harvell's bedroom?"  Chism answered, "Yes, sir we did."  Chism testified that Harvell's bedroom was the "master bedroom" of the apartment.  Chism also testified that Harvell's belongings, including "bank cards" with Harvell's name on them, were found in the bedroom.[6]  As discussed above, the meth was found in a safe in the closet of the bedroom.  A deadbolt had been installed on the closet door, and the safe was not only equipped with a fingerprint lock but also bolted to the concrete slab of the house.  Chism also testified that earlier the same day, his CI went to the house, made contact with Harvell, and returned with meth.

¶36.    On these facts, there was sufficient evidence to sustain the conviction.  We reiterate that when the defendant challenges the sufficiency of the evidence, the test is "whether rational, reasonable fair-minded jurors *could have found* that the State proved each essential element of the crime."  *Poole*, 46 So. 3d at 293 (¶20) (quotation marks omitted).  There was

---

[6] Harvell argues that Chism was ambiguous as to whether the bank cards were found in the bedroom or the kitchen.  However, the entirety of Chism's testimony indicates that the cards with Harvell's name on them were found in the bedroom.

16

sufficient evidence in this case for a rational jury to find that the safe and drugs at issue were found in Harvell's bedroom. During Chism's cross-examination, defense counsel did not challenge or explore the basis of Chism's testimony that the bedroom and closet belonged to Harvell. Indeed, while arguments of counsel are not evidence, we cannot help but note that defense counsel began his closing argument by conceding that the safe was located in a "closet in Roman Harvell's bedroom." In addition, Chism was familiar with Harvell's apartment because he had been there before on prior search warrants. Chism's testimony was sufficient for a rational jury to conclude that the bedroom was Harvell's bedroom and that the closet was Harvell's closet.

¶37. A rational jury could also find that Harvell exercised dominion and control over the meth found in the locked safe in his locked bedroom closet. Jurors are instructed and expected to use their "good common sense in considering and weighing" the evidence. *E.g.*, *Miller v. State*, 980 So. 2d 927, 930 (¶12) (Miss. 2008). Rational jurors exercising good common sense could conclude that Harvell would not have allowed someone else to bolt a safe to the concrete slab of his apartment inside a closet in his own bedroom. *Cf. Powell*, 355 So. 2d at 1379-80 (holding that there was sufficient evidence to support a jury verdict and conviction based on constructive possession where, although the premises was not in the exclusive possession of the accused, marijuana was found in the living room and in the accused's bedroom closet but not in the apartment's other bedroom). Further, the jury heard evidence that a CI obtained meth from Harvell earlier the same day.

¶38. Viewing the evidence in the light most favorable to the State, there was sufficient

17

evidence for a jury to find that the bedroom was Harvell's, that he was aware of the presence and character of the meth, and that he exercised dominion and control over the drugs found in the safe. Therefore, Harvell's conviction is supported by sufficient evidence.

## CONCLUSION

¶39. The trial judge did not abuse his discretion by denying Harvell's last-minute motion for a continuance. Nor did the trial judge err by denying Harvell's motion for a new trial based on ADA Daniels's prior representation of Duvall. We further note that Harvell has not shown that he experienced any prejudice as a result of either of these alleged errors. Finally, there was sufficient evidence for a rational jury to find that Harvell constructively possessed the meth found in the safe in his bedroom closet.

¶40. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**