# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CT-00162-SCT

*THOMAS WAYNE HAMM AND*

*TERRI WRIGHT HAMM*

*v.*

*STATE OF MISSISSIPPI*

## ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/10/95 |
| TRIAL JUDGE: | HON. JAMES W. BACKSTROM |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KENNETH K. CRITES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT FLYNN |
| DISTRICT ATTORNEY: | DALE HARKEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND RENDERED - 03/25/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/15/99 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Terri Wright Hamm was convicted of possession of more than one kilogram of marijuana with intent to distribute and possession of methamphetamine, and sentenced to serve five years in the custody of the Mississippi Department of Corrections on the first count, and three years in the custody of the Mississippi Department of Corrections on the second count, with said sentences to run concurrently. She appealed, and her case was assigned to the Court of Appeals, which affirmed her conviction. Wright filed a Petition for Writ of Certiorari wherein she challenges the Court of Appeals opinion regarding the sufficiency of the evidence and the trial court's denial of certain jury instructions requested by her. Because we find that the evidence presented at trial is insufficient to support Hamm's conviction, we reverse and render.

## FACTS

¶2. On August 23, 1993, Sergeant Potts and Captain Randy Sibley of the Mississippi Highway Patrol were

working on Interstate 10 in Jackson County, Mississippi. Inspector Bruce Ford, Jr. and Inspector Wayne Dupont of the Mississippi Public Service Commission (MPSC) were working in conjunction with Officers Potts and Sibley, who used a radar device to determine that an eighteen-wheel tractor-trailer truck which Thomas Hamm was driving, and his wife Terri Hamm was riding in as a passenger, was speeding. Officers Potts and Sibley did not stop the vehicle immediately, but instead waited until Hamm drove it into the Orange Grove weighing station off the Interstate, where MPSC Inspectors Ford and Dupont were waiting.

¶3. When Hamm pulled the truck onto the scales, Sergeant Potts pulled his patrol car beside the truck, and signaled the scales' operator to turn on a light which directed Hamm to drive around to the rear of the scales building where Inspectors Ford and Dupont were waiting to inspect the truck to determine if Hamm was operating it legally. After Captain Sibley issued a warning citation for speeding to Thomas Hamm, Inspector Ford began his inspection. It was determined that Thomas Hamm owned both the Peterbilt tractor and the trailer which it was pulling.

¶4. Ford asked for, and obtained from, Thomas Hamm the paperwork he was required by state and federal law to carry regarding the vehicle and its load. The paperwork contained five bills of lading for Hamm's load of limes and mangoes. Sergeant Vernon Gazzo arrived on the scene and obtained Thomas Hamm's permission to search the cab of his Peterbilt. As Terri Hamm stepped down from the truck pursuant to the officer's, Gazzo saw a one-foot square cutting board with a single-edged razor blade and a gray tube lying there with it between the seats. Gazzo then searched the closet in the sleeper behind the truck seats, where he found a red tin can which contained a small quantity of marijuana.

¶5. Inspectors Ford and Dupont asked Thomas Hamm to open the refrigerated trailer, which was locked with a padlock. Mr. Hamm unlocked the padlock with his key, and Inspector Dupont entered the trailer to inspect the load. Toward the front of the trailer, Inspector Dupont observed a load of limes which he testified were spoiled, rotten, and molded. In front of the limes he found four U-Haul cardboard boxes containing several packages of marijuana, later determined to weigh 196 pounds, which had been individually wrapped in transparent wrap.

¶6. Both of the Hamms were arrested, and Sergeant Potts drove Hamm's vehicle to a truck-freight yard in Gulfport where he left it for the night. The next morning as he completed the search of the trailer, Sergeant Potts found a small brown box wrapped in gray duct tape which contained methamphetamine, and $6,000 currency wrapped in a bundle.

¶7. Terri Hamm was jointly indicted with her husband for possession of more than one kilogram of marijuana with intent to distribute and possession of methamphetamine. A joint trial resulted in a jury convicting Terri Hamm and her husband being convicted of possession of more than one kilogram of marijuana with intent to distribute and possession of methamphetamine. Terri Hamm was sentence to pay a fine of $10,000, to pay a lab fee of $125, and to serve five years in the custody of the Mississippi Department of Corrections for the possession of marijuana with intent to distribute conviction, and to pay a fine of $1,000, to pay a lab fee of $125, and to serve three years in the custody of the Mississippi Department of Corrections for the possession of methamphetamine conviction.

¶8. The Hamms appealed and filed separate briefs; however Thomas Hamm joined in all issues his wife presented pursuant to Rule 28(i) of the Mississippi Rules of Appellate Procedure. The case was assigned to the Court of Appeals which affirmed both convictions. Terri Hamm only filed a Petition for Writ of Certiorari seeking review of the Court of Appeals' holding regarding the sufficiency of the evidence and the

trial court's denial of certain jury instructions she offered.

## ANALYSIS

### I.

### Insufficient Proof of Intent to Distribute

¶9. In her petition, Hamm first alleges that the evidence was insufficient to support her conviction in that the State failed to prove that she had possession, either constructive or actual, of the illegal substances found in the tractor-trailer. She alleges that the opinion of the Court of Appeals is in conflict with *Fultz v. State*, 573 So.2d 689 (Miss. 1990); *Ferrell v. State*, 649 So.2d 831 (Miss. 1995); *Curry v. State*, 249 So.2d 414 (Miss. 1971), and *Berry v. State*, 652 So.2d 745 (Miss. 1995).

¶10. On this issue, the Court of Appeals found:

> Unlike her husband, Terri Hamm did not own the truck, and she did not have a commercial driver's license. Neither did the State demonstrate that she had a key which would unlock the padlock on the doors of the refrigerated trailer.

> In her argument on this issue, Terri Hamm stresses that her counsel asked MHP Sergeant Potts, MPSC Inspector Ford, MHP Sergeant Gazzo, MPSC Inspector Dupont, and Agent Sam Owens with the Mississippi Bureau of Narcotics if any of them had any evidence to connect her with the contraband other then her proximity to it and that all six of them could supply no other evidence.

> We have already recited that Terri Hamm traveled with her husband in his Peterbilt truck and trailer from their home in Tennessee to Houston and on to South Texas where they were loaded with limes and mangoes for transportation to Jacksonville and Tampa, Florida. Sam Owens testified that Miami was recognized as a destination for controlled substances shipped into the United States from other countries and as a point from which these controlled substances were distributed throughout the United States. The State introduced into evidence a photocopy of a hotel bill from Budget Inn in Richmond, Texas, for the night of August 23, 1993, in the name of Terri Hamm. The Hamms testified that Terri Hamm alone spent the night in Budget Inn while her husband unloaded the freight in his trailer in Houston, Texas.

> The hotel bill included the charge for two long-distance telephone calls which were placed from the telephone in the room, the first of which was made to (813) 639-9870 at 10:08 p.m., and the second of which was made to (813) 639-9933 at 11:15 p.m. Sam Owens testified that both of these telephone numbers were pay telephones located in Miami, Florida. During the direct-examination of Terri Hamm, she testified that she did not remember making any telephone calls from her room in the Budget Inn the night of August 23. Terri Hamm's memory did not improve under the State's cross-examination about these telephone calls.

> In *Martin v. State*, 413 So. 2d 730, 732 (Miss. 1982), the Mississippi Supreme Court opined that the elements of constructive possession may be proved by circumstantial evidence. Terri Hamm testified in her own behalf, but from her inability to remember having made two telephone calls to pay phones in Miami, the jury may well have been warranted in infer [sic] that the calls related to the delivery of the contraband which Terri Hamm knew her husband was going to pick up in South Texas

and deliver after he arrived in Florida. "If it be sufficient to support an inference of guilt and the defendant fails to offer a reasonable explanation consistent with innocence, such failure may be considered by the trier of fact." *Ohio v. Clay*, 280 N.E.2d 385, 388 (Ohio Ct. App. 1972).

\* \* \* \* \* \* \* \* \* \*

From all the evidence which the State adduced in the trial *sub judice*, we permit the jury to infer from the telephone calls made to two pay-phones in Miami by Terri Hamm, the presence of the paraphernalia and small quantity of marijuana in a tin can in the closet of the sleeper of her husband's truck, and her accompaniment of her husband from Tennessee to South Texas to Florida that Terri Hamm knew that her husband's trailer was carrying more than limes and mangoes. We hold that "a reasonable and fair-minded [jury] could . . . find [Terri Hamm] guilty," and we affirm the trial court's denial of her motion for JNOV.

(Court of Appeals opinion at pages 18-19).

¶11. The constructive possession rule was set forth in ***Curry v. State***, 249 So.2d 414 (Miss. 1971), wherein this Court stated:

What constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of "possession" is a question which is not susceptible of a specific rule. However, there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.

249 So.2d at 416.

¶12. In ***Hudson v. State***, 362 So.2d 645 (Miss. 1978), this Court held:

The only evidence of constructive possession was: (1) the admissions of Randolph and Vincent that they had known Blue for about three weeks, had driven in the car previously with him, and on one occasion Vincent had driven in the car alone; (2) that when the marijuana was found, Vincent was in the backseat asleep and Randolph was in a cafe in front of which the car was parked; and (3) that Vincent told the officers Randolph had driven the car to the cafe with him and Blue as passengers, although Vincent denied this at trial and contended that he did not know who drove the car because he was asleep.

There is no evidence in this case that the defendants exercised dominion and control over the marijuana. First, even the proximity is questionable since the marijuana was not inside the car, but secreted under the hood of the car. Second, even if such were sufficient to satisfy the proximity requirement, nevertheless, there is a total absence of "other incriminating circumstances" as required by the *Curry* decision.

We also note that the test of *Curry* is dominion and control over the marijuana not dominion and control over the automobile. The proof arguably might show temporary dominion and control over the

automobile, however absent other circumstances, this alone will not suffice to prove dominion and control over the marijuana in a situation such as here presented.

*Hudson* at 646-647.

¶13. In *Cunningham v. State*, 583 So.2d 960 (Miss. 1991) the Court stated:

The prosecution in this case was required to prove Mr. Cunningham "knowingly or intentionally" possessed the cocaine found inside the truck. In *Curry v. State*, 249 So.2d 414 (Miss.1971), we acknowledged a single, mechanical rule could not serve to test whether the prosecution met this standard of proof in individual cases; rather, each case must be viewed in light of its individual facts and circumstances:

[T]here must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances. *Curry* at 416.

In *Keys v. State*, 478 So.2d 266 (Miss.1985), we further found that "[a]n item is within one's constructive possession when it is subject to his dominion or control." *Keys* at 268.

A presumption of constructive possession arises against the owner of premises upon which contraband is found. *Hamburg v. State*, 248 So.2d 430, 432 (Miss.1971); *Pool v. State*, 483 So.2d 331, 336-337 (Miss.1986). However, when contraband is found on premises which are not owned by a defendant, mere physical proximity to the contraband does not, in itself, show constructive possession. As we stated in *Fultz v. State*, 573 So.2d 689, 690 (Miss.1990), "the state must show additional incriminating circumstances to justify a finding of constructive possession." Similarly, in *Powell v. State*, 355 So.2d 1378, 1379 (Miss.1978), we found "[w]here the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband." *Citing Sisk v. State*, 290 So.2d 608, 610 (Miss.1974); *see, also, Jackson v. State*, 566 So.2d 477, 476 (1990); *Hudson v. State*, 362 So.2d 645, 647 (Miss.1978).

In summary, these cases establish that when contraband is found on premises, there must be evidence, in addition to physical proximity, showing the defendant consciously exercised control over the contraband, and, absent this evidence, a finding of constructive possession cannot be sustained.

*Cunningham v. State*, 583 So.2d 960, 962 (Miss. 1991) (footnote omitted).

¶14. In *Fultz v. State*, 573 So.2d 689 (Miss. 1990), Fultz was pulled over for erratic driving and arrested after failing three field sobriety tests. Upon conducting an inventory search of the vehicle Fultz was driving, a blue duffel back containing several bags of marijuana was found in the trunk. A small amount of marijuana was also found on Fultz when he was searched at the Desoto County Jail. Fultz denied any knowledge of the marijuana in the trunk, and the vehicle in which the contraband was found belonged to his sister. *Fultz* at 689-690. Fultz was convicted, and on appeal, he argued that the evidence was insufficient to prove he knowingly and intentionally possessed marijuana[1].

¶15. We reversed and rendered his conviction stating:

> In this case, the only additional incriminating circumstance was that the defendant had a small amount of marijuana on his person at the time of the arrest. We hold that this factor, standing alone, is insufficient to prove any connection between the contraband and this defendant. The other facts that the state relies on to prove a connection between the contraband and this defendant are that he admitted smoking marijuana and that he had made several "unexplained stops during the night" and that it would be illogical for someone to leave their drugs in a vehicle that someone else would drive. We fail to see how these "facts" tend to connect the defendant to the drugs.

> Evidence of such a questionable quality cannot take the place of good police work. We cannot help but wonder why the police department failed to dust the trunk for fingerprints or for that matter the bags themselves. Also why didn't they try to determine if the defendant owned the duffel bag or any of the other items in the trunk. This could have bolstered their case considerably. It also would have been helpful to question the owner of the car. In light of this poor police work, and the absence of any evidence connecting the defendant with the trunk or any of its contents, we have no choice but to reverse this conviction and discharge the defendant.

*Fultz* at 691.

¶16. In *Jones v. State*, 693 So.2d 375 (Miss. 1997), Jones and Jawara were stopped by two deputy sheriffs. A search of the vehicle yielded a jacket in the back seat which contained a bag of marijuana. Jones and Jawara were arrested, and a subsequent inventory search of the vehicle was conducted. A revolver was found in a brief case in the back seat, a set of scale was found in the car, and approximately twelve pounds of marijuana was found in the trunk of the automobile. *Jones* at 375-376. Jones was convicted of possession of more than one kilogram of marijuana, and on appeal he argued that the trial court erred in denying his motion for a directed verdict. The Court reversed and rendered, and in so doing stated:

> In this case there is nothing to connect Jones to this marijuana except for his presence in the car. Jones was not the one spotted by Lillian Johnson in the Amoco station as allegedly having marijuana; Jones was not connected with the jacket in the backseat of the car containing marijuana; Jones did not own or drive the car in question; Jones did not testify at trial; Jawara either denied or did not know of any connection between Jones and the marijuana in the car. The evidence was insufficient to show Jones's constructive possession of the marijuana and a directed verdict should have been granted in his favor. The judgment of the Court of Appeals and the Jackson County Circuit Court is reversed and rendered.

*Jones* at 377.

¶17. In the present case, there was no competent evidence which linked Terri Hamm to the any of the contraband. There was no evidence that she made the telephone calls to Miami, nor was there any evidence that she was in the room when the telephone calls were made. The only evidence the State brought forth regarding the telephone calls was that the calls were made from Hamm's motel room to Miami, which is a destination and distribution point for illegal narcotics. The fact that marijuana and marijuana cigarettes were found in the cab of the truck is of no help to the State's case.

¶18. In *Ferrell v. State*, 649 So. 2d 831, Appellant was convicted of possession of crack cocaine. The

contraband was located in a matchbox between the front seats of the vehicle. We held:

> In *Cunningham v. State*, 583 So.2d 960, 961 (Miss.1991), a passenger in a vehicle was convicted of possession after police found cocaine on the floor of the vehicle. In overturning the conviction, the Court found that the prosecution failed to establish that the defendant had possession of the cocaine. *Id.* at 962.

*Ferrell* at 835.

¶19. The Court went on to say:

> As the operator of the car, Ferrell had dominion and control over the contraband discovered in the car. However, he was not the owner of the car; therefore, the State was required to establish additional incriminating circumstances in order to prove constructive possession. The State claims that the location of the matchbox next to the driver's seat and the 15 hours which Ferrell had possession of the car amounted to additional incriminating circumstances. These contentions are incorrect. Just as in *Fultz*, the contraband was not positioned in such a way that its presence would be reasonably apparent to a person riding in the car. The mere fact that the matchbox was only a matter of inches from where the defendant was sitting, rather than in the trunk, does not overcome the fact that the crack was cloaked. *Cunningham*, 583 So.2d at 962. Furthermore, Ferrell's possession of the car for a mere 15 hours does not qualify as an incriminating circumstance.

*Id.*

¶20. In *Berry v. State*, 652 So.2d 745 (Miss. 1995), this Court held that there was insufficient evidence to prove possession of cocaine even though Berry handled a package which contained crack cocaine. There we stated:

> These facts are not sufficient to evince that Berry had any control over the drugs under *Callahan*. He simply place them in the glove compartment at Anderson's request, in Anderson's car, and in Anderson's presence. There was no evidence that he owned the drugs, paid for them, or controlled them in any manner.

*Berry* at 751. *See also* *Fultz v. State*, 573 So.2d 689 (Miss. 1990).

¶21. In the present case, the evidence shows that the contraband was located in the locked trailer of the truck in which Terri Hamm was riding in as a passenger. Thomas Hamm was both the owner and operator of the truck. Terri Hamm did not have a key to the trailer which was locked. There was no other competent evidence to link her to the contraband, and therefore, because there was insufficient evidence to support the conviction, Terri Hamm's conviction is reversed and rendered.

## II.

### Error in Denying Jury Instruction D 2-12

¶22. In her petition, Terri Hamm also argues that the Court of Appeals erred in affirming the trial court's denial her jury instruction D 2-12. She argues that the instruction would have set forth the principle set forth in *Cunningham v. State*, 583 So. 2d 960, 962-963 (Miss. 1991), which states that mere proximity is

insufficient to establish dominion and control. She alleges that this error forever closed the possibility of her being acquitted over what was clear error by the trial court. Because we reverse and render based on insufficiency of the evidence, we decline to address this issue.

## CONCLUSION

¶23. Terri Hamm did not own the vehicle in which the marijuana and methamphetamine were found, and as such, there must be other evidence connecting her to the illegal substances to warrant a finding that she was intentionally and consciously in possession of them. In this particular case there was no such evidence, and therefore this Court has no alternative but to reverse and render the conviction. The judgment of the Court of Appeals and the Jackson County Circuit Court is reversed and rendered.

¶24. **REVERSED AND RENDERED. TERRI WRIGHT HAMM DISCHARGED.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., NOT PARTICIPATING.**

1. Fultz did not deny knowledge of the marijuana found in his wallet, and was prosecuted for misdemeanor possession in a separate proceeding which was not before the Court. *Fultz* at 690 (fn. 2).