# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00623-COA

CEPHUS CHANNING TERRY A/K/A CEPHUS C. TERRY A/K/A CEPHUS TERRY                                                                 APPELLANT

v.

STATE OF MISSISSIPPI                                                                 APPELLEE

DATE OF JUDGMENT:           11/21/2018
TRIAL JUDGE:                HON. MARK SHELDON DUNCAN
COURT FROM WHICH APPEALED:  NESHOBA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     WILLIAM B. JACOB
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: JOHN R. HENRY JR.
DISTRICT ATTORNEY:          STEVEN SIMEON KILGORE
NATURE OF THE CASE:         CRIMINAL - FELONY
DISPOSITION:                AFFIRMED - 02/18/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

EN BANC.

BARNES, C.J., FOR THE COURT:

¶1.     Cephus Terry was charged with possession of cocaine with intent to sell, possession of methamphetamine, possession of Tramadol, and two counts of possession of a firearm by a felon. He was convicted on all five counts by a Neshoba County Circuit Court jury, and the Neshoba County Circuit Court sentenced him to serve forty-six years in the custody of the Mississippi Department of Corrections (MDOC) as a habitual offender. The court denied his motion for a new trial, and Terry appeals, arguing that there was insufficient evidence to support his convictions and that the jury was not properly instructed as to the elements of

constructive possession. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Based on a tip by a confidential informant (CI) regarding illicit drug activity, the Neshoba County Sheriff's Department executed a search warrant at an apartment on Ivy Street in Philadelphia, Mississippi, on August 2, 2017. When the chief investigator, Ralph Sciple, and deputies arrived at the apartment, they observed a car parked in the driveway, still running. Law enforcement went to the door of the apartment, which was ajar. Sciple announced himself, stated that he had a warrant, and entered the apartment. A child was asleep on a couch; Terry and another child were coming out of a bathroom. The children were approximately eight and ten years of age, and Terry was the only adult in the apartment. Terry told Sciple that he had been living in the apartment for about a year.

¶3. Sciple observed a white, powdery substance on a kitchen table along with sandwich bags, a box of baking soda, and a set of digital scales. There was also a "Cricket Wireless" bag containing a white residue in plain view on the table. A white, powdery substance was found in a sandwich-bag box, and there was foil that appeared to have contained tablets. Pills were found on the table and on a nearby wooden box. Star-shaped pills were found on a coffee table. Also in plain view were two pistols on a television stand—a .22-caliber Ruger and a .40-caliber High-Point. Ammunition was found, as well as two gun holsters. All of the items were sent to a crime laboratory for analysis.

¶4. Terry was indicted for (1) Count One: possession of cocaine with intent to sell, with a firearm enhancement; (2) Count Two: possession of methamphetamine, with a firearm

2

enhancement; (3) Count Three: possession of firearm by a felon; (4) Count Four: possession of firearm by a felon; and (5) Count Five: possession of Tramadol. A jury trial was held on November 13, 2018.

¶5. Sciple testified that the CI had been at the apartment on Ivy Street on the night of August 1, 2017, and that the CI had seen cocaine and methamphetamine at the residence. The CI informed Sciple of the drug activity, and Sciple promptly requested a search warrant. Sciple served the warrant on the afternoon of August 2, encountering Terry, who was the only adult at the apartment. There was a loaded Ruger .22-caliber pistol and a High Point .45-caliber pistol found on a television stand in the living room. There were boxes of ammunition for other calibers of weapons found. Sciple also noted the presence of the suspected controlled substances. On cross-examination, Sciple acknowledged that a casino player's club card with another person's name on it (not Terry's) was among the things found in the apartment, and he could not state that Terry's fingerprints were found on any of the drugs or guns.

¶6. The justice court judge who issued the warrant, Johnathan Spears, testified at a suppression hearing outside the jury's presence that Sciple told him that the CI was a credible witness and that there was drug activity occurring at the apartment.

¶7. Jamie Johnson of the Mississippi Forensics Laboratory was tendered as a witness and accepted as an expert in the field of forensic science and drug analysis. She received seven packets of substances from law enforcement. The first packet contained twenty-two factory-sealed caffeine tablets. The second packet contained two dosage units of methamphetamine

and caffeine. The third packet did not contain a controlled substance. The fourth packet contained 26.917 grams of cocaine. The fifth packet contained dimethyl sulfone, a non-controlled substance commonly found in methamphetamine. The sixth packet contained ten dosage units of Tramadol. The seventh packet also contained nineteen dosage units of Tramadol.

¶8. The parties agreed to stipulate to Terry's prior convictions, and the State rested. Defense counsel moved for a directed verdict, which the circuit court denied. Kiara Baxstrum, the mother of Terry's children, testified that she resided at the apartment on Ivy Street on August 2, 2017. She said that Terry did not live with her and had no possessions in the apartment. Baxstrum explained that Terry was at the apartment that day because she had to go to work and Terry was going to take their children to their grandfather's house. Baxstrum reiterated that Terry had no possessions in the apartment, and she claimed that the guns, drugs, and other items found there belonged to her.

¶9. However, when questioned further, Baxstrum could not recall where she obtained a prescription for Tramadol or why the pills were not in a prescription bottle. She also could not identify where she got the guns and claimed that she did not shoot them often. Baxstrum denied using cocaine or methamphetamine. She said that she had the digital scales for "different reasons," and the bags on the table were there because she is messy. She acknowledged that she did not want to see Terry go to jail.

¶10. Terry testified that he did not live with Baxstrum and their children on Ivy Street and that, as of August 2, 2017, his residence was at 264 Davis Street, Philadelphia, Mississippi.

4

He denied possession of the cocaine, methamphetamine, and Tramadol found in the apartment; Terry also denied ownership of the pistols. He said that he did not have any personal possessions in the apartment and that he had not paid any expenses related to leasing the apartment. Terry stated that he was at the apartment because Baxstrum had asked him to pick up the children, which is why he had left his vehicle running. According to Terry, he had no sooner told the children to get ready to leave when law enforcement entered the apartment. When asked about telling Sciple that he had lived there one year, Terry explained that Sciple had been asking questions about his children; so he thought the investigator was asking him about how long the children had lived there. He denied being at the apartment the night before the search or having noticed the drugs and the pistols during the time he was in the apartment.

¶11. The defense rested. The State re-called Sciple as a rebuttal witness, who reiterated that Terry told him that he (Terry) had lived in the apartment for a year. Sciple also testified that Baxstrum came to his office after the search, told him that the firearms belonged to her, and that she wanted them back. She said nothing to him about the drugs being hers.

¶12. Terry was convicted on all five counts, and the circuit court sentenced Terry as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015) to serve thirty years in the custody of the MDOC for Count One; six years for Count Two; ten years for Count Three with the sentence to run consecutively to the sentences in Counts One and Two; ten years for Count Four with the sentence to run concurrently with the sentences in Counts One, Two, and Three; and one year for Count Five with the sentence to run

concurrently with the sentences in Counts One, Two, Three, and Four.  Aggrieved, Terry appeals his convictions and sentences.

## DISCUSSION

### I.    Whether the evidence was sufficient to support the verdict.

¶13.    Because Terry did not have the drugs or guns on his person, he was prosecuted for constructive possession.  He contends on appeal that the State failed to prove every element of constructive possession.  In reviewing a challenge to the sufficiency of the evidence, we view "the evidence in the light most favorable to the prosecution," accepting as true "[a]ll credible evidence consistent with the defendant's guilt . . . together with all favorable inferences that may be reasonably drawn from the evidence."  *O'Donnell v. State*, 173 So. 3d 907, 916 (¶20) (Miss. Ct. App. 2015) (quoting *Robinson v. State*, 940 So. 2d 235, 240 (¶13) (Miss. 2006)).   "The critical inquiry is whether the evidence shows 'beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.'"  *Id.* (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005), *overruled on other grounds by Little v. State*, 233 So. 3d 288, 292 (¶¶19-20) (Miss. 2017)).

¶14.    "Constructive possession exists where the contraband was 'subject to the defendant's dominion or control.'"  *Jordan v. State*, 158 So. 3d 348, 350 (¶7) (Miss. Ct. App. 2014) (quoting *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971)).  "When the defendant owns or controls the premises where the contraband is found, there is a presumption of constructive possession of the contraband."  *Id.* at 351 (¶8) (citing *Ferrell v. State*, 649 So. 2d 831, 834

6

(Miss. 1995)). If, however, "the defendant's possession of the premises is not exclusive, there must be additional incriminating circumstances tying him to the drugs." *Id.* (citing *Fultz v. State*, 573 So. 2d 689, 690 (Miss. 1990)). Mere physical proximity to the contraband, absent other evidence, is not sufficient to establish constructive possession. *Hamm v. State*, 735 So. 2d 1025, 1028 (¶11) (Miss. 1999).

¶15. Terry asserts that the evidence was insufficient to support his convictions because the State did not present any evidence showing that he lived at the apartment, such as personal items or clothing. He notes that law enforcement did not talk with the landlord to see who had leased the Ivy Street apartment and failed to determine if he had paid any expenses related to the apartment, such as utilities. Therefore, he claims that the State "failed to establish a connection between himself and the illegal drugs as well as the weapons found in the apartment."

¶16. Although we agree that law enforcement could have—and probably should have—investigated further as to whether Terry resided at the apartment, we find there was sufficient evidence for the jury to determine that constructive possession existed with respect to Terry based on his proximity to the drugs *and* his admission to Sciple that he lived at the apartment. Sciple testified that it was his belief "when [he] made up the search warrant that Cephus Terry was the one that was living there and the one that controlled the house at the time." This belief was based on information provided by the CI, who told the investigator that Terry was at the Ivy Street apartment "the night before" when the CI saw the drugs. Sciple also testified that Terry told him he had lived at the apartment for a year.

7

Q.    Did [Terry], in fact, tell you that he had lived in the house.

A.    He did.

Q.    And that he was currently living in the house?

A.    Correct. Yes, sir.

As already noted, Terry claimed that he misunderstood the question, thinking the investigator was asking how long his children had lived there. However, when Sciple was re-called as a witness, he maintained that Terry responded that he lived there.

Q.    . . . As part of your investigation, did Cephus Terry state to you that he lived in Apartment No. 2 at 519 Ivy Street?

A.    He did, yes, sir.

Q.    How long did he say he had been living there?

A.    About a year.

Q.    And did he say that he was presently living there on that date, August 2nd, 2017?

A.    The question I asked him was how long *he'd* been living here. He said, "About a year."

(Emphasis added). When asked on cross-examination if Terry could have been answering that the kids had lived there for about a year, the deputy answered, "No." The evidence also showed that the drugs and guns were in plain view and that Terry was the only person, other than his children, at the apartment.

¶17.    Furthermore, even though Baxstrum testified that she and her children were the only persons who lived at the apartment and that the firearms and drugs belonged to her, when cross-examined by the State, she could not provide any information as to where she obtained

8

the guns and drugs:

Q. Where did you get the caffeine pills from?

A. I don't recall.

Q. Where did you get the prescription for the gabapentin?

A. I don't recall, sir.

Q. Where did you get the prescription for the tramadol?

A. I'm not sure.

Q. Why didn't you keep your pills in a prescription bottle?

A. I'm - just didn't, sir.

Q. Where did you get the cocaine from?

A. I don't recall.

Q. Who were you going to sell the cocaine to?

A. I'm not sure.

Q. Where did you get the black gun from?

A. I don't recall, sir.

Q. Where did you get the silver gun from?

A. I don't recall.

. . . .

Q. How often do you use cocaine?

A. I don't.

Q. How often do you use methamphetamine?

9

A.	I do not.

"[I]t is the jury's responsibility as fact-finder to resolve conflicting testimony and evaluate the credibility of witnesses." *Vinzant v. State*, 99 So. 3d 767, 774 (¶25) (Miss. Ct. App. 2012). Here, the jury, as the fact-finder, could have determined that Baxstrum's failure to recall this information indicated that she was lying about possessing the contraband in order to protect the father of her two children. The jury evidently found Sciple's testimony more credible and reliable than Terry's and Baxstrum's testimony.

¶18. Viewing the evidence in the light most favorable to the prosecution, we find that there was sufficient evidence to support Terry's convictions.

## II.	Whether the circuit court erred by improperly instructing the jury as to the elements of constructive possession.

¶19. Terry claims that the circuit court erred in failing to instruct the jury that mere proximity to controlled substances is insufficient to establish constructive possession. We find no merit to this argument. Defense counsel only objected to the State's Jury Instruction S-6, specifically the last sentence that stated "a person is presumed to be in constructive possession of the house's contents when he's occupying or exercising control over the house." After some discussion, the parties agreed to remove that language from the jury instruction, and the defense agreed to withdraw Jury Instruction D-9.[1] Jury Instruction S-6,

---

[1] Jury Instruction D-9 stated:

When the Defendant does not own the premises, the State must show additional incriminating circumstances to justify a finding of constructive possession. If the State fails to show the additional incriminating circumstances to justify a finding of such construction possession beyond a reasonable doubt, then you should find the defendant "not guilty."

10

as amended and given, provided:

> The Court instructs the [j]ury that to constitute a possession, there must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular substance or weapon and was intentionally and consciously in possession of it. It need not be actual physical possession; constructive possession may be shown by establishing that the substance or weapon involved was subject to the defendant's dominion and control.

Although the instruction does not state specifically that mere proximity is insufficient, we find it does properly instruct the jury that in order to find constructive possession, there have to be facts demonstrating that Terry had to do more than merely be in proximity of the contraband. In *Bates v. State*, 952 So. 2d 320, 323-24 (¶¶10-14) (Miss. Ct. App. 2007), we considered a similar claim made by a defendant—that the jury instructions "fail[ed] to mention that proximity to the drug by itself is not enough to convict a defendant unless incriminating circumstances are also proven." *Id*. at 324 (¶12). This Court concluded that it was "unnecessary to state that proximity alone is insufficient, because the instructions clearly state[d] all of the elements required." *Id*. at (¶14); *see also Mosley v. State*, 89 So. 3d 41, 48-49 (¶¶24-26) (Miss. Ct. App. 2011) (rejecting argument that trial court erred in refusing to give defense's jury instruction, which required the State to prove "other incriminating circumstances" other than mere proximity). Furthermore, Jury Instruction D-8 was given and specifically addressed "proximity," albeit not as Terry now argues it should have been given. Jury Instruction D-8 stated:

> In order to convict a person of constructive possession of something, it must

---

Thus, even the defense's jury instruction did not explicitly state that mere proximity was insufficient to find constructive possession.

11

be proven beyond a reasonable doubt, that the person, although it was not on his person, the person was aware of the nature and of the quality of the item. If the State fails to prove, beyond a reasonable doubt, that Cephus Terry was aware of the nature and quality of the item *that was in his proximity*, then you should find the defendant "not guilty."

(Emphasis added). Lastly, the specific objection raised by the defense was resolved satisfactorily; any other objection is procedurally barred.

¶20. Accordingly, we affirm the judgment.

¶21. **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., TINDELL AND C. WILSON, JJ., CONCUR. McDONALD, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GREENLEE, WESTBROOKS, LAWRENCE AND McCARTY, JJ.**

**McDONALD, J., DISSENTING**:

¶22. I respectfully disagree with the majority on the issue of Terry's possession of the contraband, and I would reverse his conviction. The majority and I agree that the guns and drugs were not found on Terry's person and that the State was required to prove Terry "constructively possessed" these items. In my opinion, the rebuttable presumption of constructive possession did not arise because the State failed to show Terry owned or controlled the premises. The only evidence presented by the State was Terry's answer to Sciple's disputed question at the time of the search about who resided at the apartment. Terry's presence (or even residence) in the apartment is one factor, but it is not, in and of itself, sufficient to establish constructive possession. In addition, to establish constructive possession, the State needed to prove "other incriminating circumstances." *Carver v. State*, 227 So. 3d 1090, 1094 (¶12) (Miss. 2017). I believe that there was insufficient evidence of

12

any other incriminating facts for a rational jury to have found beyond a reasonable doubt that Terry was in constructive possession of the contraband seized, and I would reverse and render on that basis. "If any facts or inferences 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render.'" *Johnson v. State*, 81 So. 3d 1020 1023 (¶6) (Miss. 2011) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005), *overruled on other grounds by Little v. State*, 233 So. 3d 288, 292 (¶¶19-20) (Miss. 2017)).

¶23.    The following precedent is relevant to this case. "Possession of a controlled substance may be actual or constructive." *O'Donnell v. State*, 173 So. 3d 907, 917 (¶22) (Miss. Ct. App. 2015) (quoting *Johnson*, 81 So. 3d at 1023 (¶7)). When a suspect "does not physically possess the illegal drugs, the State must prove constructive possession of the drugs." *Gidden v. State*, 74 So. 3d 342, 345 (¶12) (Miss. 2011). "When [the] contraband is found on [the] premises owned by the defendant, a [rebuttable] presumption of constructive possession arises." *Grassaree v. State*, 266 So. 3d 1038, 1041 (¶12) (Miss. Ct. App. 2018) (quoting *Townsend v. State*, 681 So. 2d 497, 509 (Miss. 1996)). But the State must also "show additional incriminating circumstances connecting the defendant to the contraband," especially if there is no proof of ownership of the premises or if the premises is not in the exclusive control and possession of the accused. *Carver*, 227 So. 3d at 1094 (¶12) (citing *Fultz v. State*, 573 So. 2d 689, 690 (Miss. 1990). "Proximity [to the contraband] is usually an essential element, but by itself is not adequate in the absence of other incriminating

circumstances." *Id.* (quoting *Hamm v. State*, 735 So. 2d 1025, 1028 (¶11) (Miss. 1999)), *see also Haynes v. State*, 250 So. 3d 1241, 1245 (¶8) (Miss. 2018) ("[M]ere physical proximity to the contraband does not, in itself, show constructive possession." (emphasis omitted)). Such other incriminating circumstances must prove that the contraband in question was subject to the defendant's dominion or control. *Hamm*, 735 So. 2d at 1029 (¶13). "[W]hen contraband is found on premises, there must be evidence, in addition to physical proximity, showing that the defendant consciously exercised control over the contraband, and, absent this evidence, a finding of constructive possession cannot be sustained." *Cunningham v. State*, 583 So. 2d 960, 962 (Miss. 1991).

¶24. Implicit in the proof of "other incriminating circumstances" is the need to show "that the defendant was both aware of the contraband and intentionally, although not physically, possessed it." *Grassaree*, 266 So. 3d at 1041 (¶12); *see also Carver*, 227 So. 3d at 1093 (¶12). The facts must show that the defendant was aware of the presence and character of the particular substance as well as his intentional and conscious possession of it. *Weaver v. State*, 282 So. 3d 1217, 1221 (¶15) (Miss. Ct. App. 2019) (citing *Hamm*, 735 So. 2d at 1028 (¶11)). Moreover, "absent some competent evidence connecting him with the contraband, the defendant is entitled to acquittal." *Johnson*, 81 So. 3d at 1023 (¶8) (internal quotation mark omitted).

¶25. Appellate courts have applied these principles in several cases relevant to the one at hand. For example, in *Harvell v. State*, 281 So. 3d 1024 (Miss. Ct. App. 2019) we found that there was sufficient proof to support Harvell's constructive possession of methamphetamine

14

that was found in a locked safe in his bedroom. *Id.* at 1034-35 (¶36). In that case, the State presented proof that Harvell was living at the apartment searched. *Id*. at 1027 (¶3). Police testified that the utilities had been in Harvell's name since 2011, and they had searched the apartment on two prior occasions. *Id*. On the day in question, a wired confidential informant had gone to the apartment, and law enforcement overheard Harvell giving methamphetamine to the informant. *Id*. at (¶4). Based on this information, police obtained a search warrant. *Id*. at (¶5). However, when they arrived, Harvell had left, and inside the apartment was a lady, presumably Harvell's aunt. *Id*. at 1028 (¶9). Police went to Harvell's bedroom, where they found items belonging to Harvell; among them were bank cards with Harvell's name on them. *Id*. at 1034 (¶35). They found a safe in the bedroom closet with 91.57 grams of methamphetamine in it. *Id.* Because the methamphetamine was not found in Harvell's actual physical possession, and because Harvell did not have exclusive possession or control of the premises because different people, including the aunt, were in and out at times, the State needed to prove constructive possession with additional incriminating facts. *Id*. at 1034 (¶34). The State proved that Harvell lived there: utilities were in his name, and the police who were familiar with Harvell's apartment from two other searches found Harvell's personal belongings in his bedroom. *Id.* at (¶35). A safe, equipped with a fingerprint lock and bolted to a concrete slab, was found in Harvell's bedroom closet. *Id.* In addition, they heard Harvell sell methamphetamine to the informant that day. *Id*. at 1034-35 (¶¶35-36). We found that a rational jury could find that the bedroom was Harvell's bedroom, that the closet was Harvell's closet, and the drugs were Harvell's drugs. *Id.* at 1035 (¶37).

1. *No presumption of constructive possession arose because the State failed to prove that Terry owned, resided or exclusively controlled the apartment.*

¶26. In this case, the State presented no evidence that Terry owned or exclusively controlled the premises to support a presumption of constructive possession. Both Terry and Kiara Baxstrum testified that the apartment belonged to Baxstrum. The State presented no evidence contradicting this testimony. Law enforcement had not questioned the landlord to determine if Terry rented or lived at the apartment. No effort was made to determine who was billed for the utilities. So it is undisputed that Terry did not own the premises.

¶27. Whether Terry admitted to living at Baxstrum's apartment is disputed despite the account of events found in paragraph 2 of the majority opinion. The only evidence the State presented that Terry resided at the apartment was Deputy Sciple's testimony that when he asked Terry how long he had been living there, Terry responded, "[A]bout a year." Terry testified that Sciple had asked him how long the *children* had lived there. The State provided nothing to support Sciple's testimony. None of the five other law enforcement personnel with Sciple during the search of the small apartment said that they too heard Terry admit to living there. During their search, Sciple and others failed to find any personal items belonging to Terry to show he was living there. None of them had any prior dealings with Terry to be able to say that the apartment belonged to Terry. In my opinion, the proof presented by the State was insufficient to create a rebuttable presumption of constructive possession.

2. *The State presented no proof of "other incriminating facts" required to prove constructive possession.*

16

¶28.    Sciple testified that he considered any adult present in the apartment at the time of the search to be a possessor of the drugs found.  But, as stated above, mere proximity does not prove constructive possession, and the State needed to present more evidence to support its charge of constructive possession of both the drugs and the guns.  Here the State presented no proof of actions by Terry that could been seen as incriminating.  Even the majority fails to identify any "other incriminating facts."

¶29.    The "other incriminating facts" required to establish constructive possession can be proved by testimony from a co-defendant or eyewitness, as in *Weaver v. State*, 282 So. 3d 1217 (Miss. Ct. App. 2019).  In that case, Weaver and his accomplice, Roberson, burglarized a home, taking guns and various other items.  *Id*. at 1219 (¶¶2-3).  They had arranged to meet a buyer for these items, but police arrived just as they were about to make the sale.  *Id.* Police found Weaver on the ground in front of his pickup truck.  *Id.*  He had no guns on him, but police found guns in some bushes.  *Id.* at (¶3).  Because no guns were found on Weaver, the State needed to prove constructive possession.  It did this through Roberson's testimony at trial.  *Id*. at 1219-20 (¶¶4-5).  Roberson testified that it was Weaver's idea to burglarize the home and sell the stolen items.  *Id*. at 1219 (¶4).  Weaver drove the car, entered the home, and took the guns and electronics.  *Id.*  Weaver set up the meeting to sell the stolen items. *Id.*  Based on Roberson's testimony, we held that "the facts established that Weaver was aware of the property, was consciously in possession of the property, and asserted control over the property as evidenced by his attempt to sell the property." *Id.* at 1221 (¶15).

¶30.    In the case at hand, the only non-law-enforcement witness testimony, Baxstrum's, was

17

favorable to Terry. Baxstrum verified that the premises was hers, not Terry's. She said Terry did not stay there and had no personal items at her apartment (no clothing, et cetera). She verified Terry's account of how he came to be in the apartment on August 2, 2016—namely, to pick up her children at her request.[2] Baxstrum continued to testify that everything confiscated in the search also belonged to her. This testimony was partially confirmed by Sciple, who testified that Baxstrum had come to see him after the search and wanted her guns back. He did not ask her about the drugs, but at trial she stated under oath they were hers. The majority says that a jury could have believed Baxstrum was lying to cover for her children's father. But if that were the case, Baxstrum could have devised a story that was more creative and less incriminating. Instead, she testified to facts that could have led to her own prosecution. Even if the jury did not believe Baxstrum when she claimed ownership of the drugs, Terry was not found "manufacturing" or packaging the drugs. No drugs were found on his person, and no drug residue was found on his hands. His fingerprints were not found on the confiscated guns. There was still no evidence tying Terry to the drugs or guns.

¶31. Moreover, Terry's conduct when Sciple entered the apartment could not be viewed as incriminating either. Often the State can prove "other incriminating circumstances" by the actions of the accused themselves. In *Lavant v. State*, 281 So. 3d 48 (Miss. Ct. App. 2019), Officer James Cowan stopped Lavant at 3:00 a.m. for driving with no headlights. *Id.* at 50 (¶2). As he approached the vehicle, he saw Lavant put something behind the passenger

---

[2] The fact that law enforcement found Terry's car at the apartment, running, and the door ajar supports the truth of her and Terry's testimony that he had just come by to pick up the children.

seat. *Id.* Cowan saw an open container of beer in the car and asked Lavant if he had been drinking. *Id.* Lavant admitted to having a few drinks earlier at the casino, so Cowan called for a DUI officer to conduct a field sobriety test. *Id.* While they waited, Lavant asked to be able to go use the restroom at a nearby gas station. *Id.* Cowan refused the request. *Id.* Officer Jason Cummings arrived and later testified that as he approached Lavant's vehicle, Lavant appeared to be stuffing something between the driver's seat and the console. *Id.* Lavant passed the sobriety test but consented to a search of the vehicle. *Id.* at (¶4). The officers found a pill bottle with no name on it containing multi-colored, multi-shaped pills stuffed down between the driver's seat and the console. *Id.* at 51 (¶5). Inside the console, they also found another clear pill bottle with a prescription label on it with the name Dorothy Parnell, the owner of the vehicle. *Id.* The substance in the bottle was tested and found to be methamphetamine. *Id.* The officers also found marijuana and $1,000 in cash. *Id.* Lavant had $200 in twenty-dollar bills on him. *Id.*

¶32. At trial, the officers testified as noted above, along with a forensic scientist who identified the drugs. *Id.* at 51 (¶8). The State then called the lead investigator on the case, Clint Fore, who was qualified as an expert in the field of narcotics investigation. *Id.* at 52 (¶10). He testified that the methamphetamines found were a type of Ecstasy and that the 186 dosage units found and the large amount of cash found indicated that the person may be selling drugs. *Id.* He also testified that a lot of drug dealers do not travel in their own vehicles so they can claim that the drugs were not theirs. *Id.* The jury convicted Lavant of possession of the drugs with intent to sell. *Id.* at (¶14). On appeal, we found that there was

ample evidence supporting a finding of constructive possession. *Id*. at 54, 56 (¶¶20, 25). This included Cummings's testimony that he saw Lavant stuff something between the driver's seat and the center console, *id*. at 56 (¶25), as well as Cowan's testimony that persons having illegal contraband often want to distance themselves from their vehicle—conduct Lavant displayed when he asked to go to the gas station. *Id*. at 55 (¶22). Expert Fore also testified that the standard price for one dose of ecstasy was twenty dollars, *id.* at 56 (¶25), and Lavant had $200 in twenty-dollar bills on him. *Id*. at 55 (¶24). From this evidence and the testimony of the officers on site, we did not find it unreasonable that the jury determined Lavant constructively possessed the illicit drugs. *Id.* at 56 (¶25). *See also Blissett v. State*, 754 So. 2d 1242, 1245 (¶9) (Miss. 2000) (During a vehicle stop, an arresting officer smelled a strong, overpowering odor of marijuana, and Blissett's nervous demeanor at the time of the stop was inconsistent with a lack of knowledge of marijuana in the car.).

¶33. Unlike the accused in *Lavant*, the State presented no testimony that Terry exhibited any suspicious behavior. When Sciple and other law enforcement arrived at the apartment, Terry came from the rear accompanied by his daughter. He was not rushing and there was no testimony that he was nervous or hurried. He left the front door ajar, which is not what one expects a person packaging drugs to do. There was no proof that he had any interaction with the drugs found or was trying to hide anything.

¶34. There is only one undisputed fact in this case—that Terry was the only adult present in Baxstrum's apartment at the time of the search. But this is insufficient to prove a connection between Terry and the contraband confiscated or his knowledge and intentional

control or dominion over it. Proof stronger than this was presented in *Fultz v. State*, 573 So. 2d 689 (Miss. 1990), and the supreme court still found no constructive possession. *Id*. at 691. There Fultz, who was driving his sister's car, was pulled over, and police found a duffle bag of marijuana in the trunk. *Id.* at 689-90. Fultz himself had a small amount of marijuana on his person at the time of his arrest and had made several unexplained stops during the evening. *Id.* at 691. In reversing Fultz's conviction of possession with intent to distribute, our supreme court said:

> We fail to see how these "facts" tend to connect the defendant to the drugs. Evidence of such a questionable quality cannot take the place of good police work. We cannot help but wonder why the police department failed to dust the trunk for fingerprints or for that matter the bags themselves. Also why didn't they try to determine if the defendant owned the duffel bag or any of the other items in the trunk. This could have bolstered their case considerably. It also would have been helpful to question the owner of the car. In light of this poor police work, and the absence of any evidence connecting the defendant with the trunk or any of its contents, we have no choice but to reverse this conviction and discharge the defendant.

*Id.*

¶35.    Similarly, in this case, it is my opinion that the evidence presented by the State is insufficient to sustain Terry's conviction of possession of either the drugs or the firearms. I cannot help but wonder why no steps were taken to ascertain who really owned the apartment. With no evidence to the contrary, the only evidence was that Terry was not the owner. Nor did law enforcement search for items undoubtedly belonging to Terry (such as men's clothing or other personal items) to show that he lived there or had dominion and control of the apartment or of the drugs seized. There was no proof that Terry was aware of the presence or character of the pills and powder (some of it benign) found amidst the

21

clutter in the home.[3]  Even Deputy Sciple agreed that he did not know what the pills and powder he  eventually found were:

> Q.     . . . There's nothing for a lay person like me, you, or Mr. Terry to walk in to say that's not ibuprofen, Tylenol or I would guess, other than having a crime lab (inaudible) put in our mouth, we wouldn't know, Deputy Sciple, what that is; correct?
>
> A.     That's correct.  That's the reason I sent it to the crime lab.
>
> Q.     So there's no -- do you have any knowledge that Mr. Terry knew that that was whatever it's claimed to be?
>
> A.     I have no knowledge of that, no.

¶36.    I recognize that it is the jury's responsibility to resolve conflicts in the testimony and evaluate the credibility of witnesses.  However, the State must still present evidence to the jury to prove every element of constructive possession.  The jury's resolution of the conflicting testimony between Terry and Sciple concerning whether Terry lived in the apartment may determine one element of constructive possession.  But the State failed to present any evidence to prove "other incriminating acts" by Terry.  Based on the evidence presented by the State to prove Terry's constructive possession of the drugs and guns

---

[3] As shown by the photographs taken during the search, the kitchen and living areas were full of clutter and trash.  One of the two guns was found on the corner of a console table amidst children's toys, crayons, photos, and CD's, and the other gun was on the table's bottom shelf atop some magazines.  The white, powdery substances were found loose among debris on the kitchen table, on the counter by the sink, and on a table beside an ashtray and other litter.  Powder was on the table with a Gatorade bottle, someone else's driver's license, some children's Tylenol, a lampshade, and other items. Additional powder was found inside the Cricket phone bag on the kitchen table along with approximately twenty packets of Alert Aid caffeine pills.  Several white pills were found on a picture frame on the kitchen table underneath some plastic shopping bags; others were found loose on a black wooden plate with salt and pepper packs, a pencil, a packet of jam, and a car jack for a phone; two other star-shaped pills were found on a coffee table inside a candle.

confiscated, it is my opinion that more facts and inferences point in Terry's favor with sufficient force such that reasonable men could not have found beyond a reasonable doubt that he was guilty. Accordingly, for the State's failure to prove both of the elements of constructive possession, I would reverse Terry's conviction.

**GREENLEE, WESTBROOKS, LAWRENCE AND McCARTY, JJ., JOIN THIS OPINION.**